STATE of Iowa, Appellee,

v.

Claude F. BUMPUS, Appellant.

No. 89–565.

Supreme Court of Iowa.

July 18, 1990.

Kevin M. Kirlin, Des Moines, for appellant.

Thomas J. Miller, Atty. Gen., Amy M. Anderson, Asst. Atty. Gen., and James Smith, Co. Atty., for appellee.

Considered by HARRIS, P.J., and LARSON, SCHULTZ, SNELL, and ANDREASEN, JJ.

SNELL, Justice.

Claude Bumpus was convicted for possession of cocaine with intent to deliver in violation of Iowa Code section 204.-401(1)(a)(1987). Bumpus was sentenced to a term of incarceration not to exceed ten years, and since the offense was his second, the court enhanced the term to thirty years pursuant to Iowa Code section 204.-411 (1987). The court also applied the provisions of Iowa Code section 204.413 (1987)

to ensure that Bumpus would serve a minimum of one third of the enhanced sentence. We affirm.

Des Moines police officers Garey Bryan and Michael Stueckrath were patrolling in the vicinity of the Another World Lounge at approximately 11:00 p.m. on November 2, 1987. They noticed three men in the parking lot of the lounge crouching behind a car. Officer Stueckrath recognized one of the three men as Marvin Taylor, and Officer Bryan recognized Bumpus. The officers observed that the men were exchanging something, though they could not see exactly what. The Another World Lounge was at the time of the incident notorious as a site for drug transactions. Based on their past experience with the precise location, the nature and furtiveness of the actions of the three men, the notoriety of the night spot, and the lateness of the hour, the officers pulled their patrol car into the lot to investigate.

As they drove into the lot, Bumpus began to run away from them. Officer Bryan pursued Bumpus into the bar while officer Stueckrath detained the other two individuals. Once in the bar, Bumpus attempted to conceal a black pouch from officer Bryan's view and Bryan asked him to step outside. Bumpus continued to back away, keeping the pouch behind his back, and Bryan seized him by the arm, leading him outside. Once outside the bar, Bumpus threw the pouch over a fence, where it was retrieved by officer Stueckrath. Immediately after he threw the pouch away, Bumpus tried to flee. After a brief struggle, officer Bryan subdued Bumpus and placed him under arrest for interference with official acts.

The pouch was subjected to a warrantless search, and forty-nine individual portions of crack cocaine were discovered. Bumpus filed a motion to suppress, arguing that officer Bryan lacked probable cause for an arrest and that as a result the warrantless search of the pouch he discarded was tainted. *See Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). The trial court ruled that based on the facts officer Bryan had a

"reasonable and articulable cause" to believe that criminal activity was occurring, and that the initial seizure of Bumpus by officer Bryan did not violate any constitutional rights. The trial court further stated that Bumpus's resistance constituted a violation of Iowa Code section 719.1 (1987). The trial court's ruling indicates that the court viewed the search of the pouch as a proper search incident to arrest based on the violation of section 719.1. The search of the pouch, in turn, was seen by the trial court as providing evidence for the arrest on the narcotics charge.

 As his first assignment of error, Bumpus argues that, contrary to the trial court's apparent conclusion, he was under arrest the instant that officer Bryan physically compelled him to leave the bar. We agree. The situation presented is quite similar to that which arose in *Sibron v. New York*, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). In one of the factual situations presented by that case, an off-duty officer chased and caught an individual attempting to commit a burglary in his apartment building. He questioned and searched the man, finding burglar's tools in his possession. *Id.* at 48–49, 88 S.Ct. at 1895, 20 L.Ed.2d at 926–27. Although no formal words of arrest were spoken until after the questioning and body search, the Supreme Court upheld the search and seizure as the fruit of a search incident to arrest. *Id.* at 66–67, 88 S.Ct. at 1904–05, 20 L.Ed.2d at 936–37. As *Sibron* indicates, an arrest occurs when an officer with probable cause takes a suspect into custody. *Id.* at 67, 88 S.Ct. at 1904–05, 20 L.Ed.2d at 937. In Bumpus's case, arrest occurred the instant that Bryan seized him by the arm and compelled him to leave the bar, if officer Bryan had probable cause. We do not mean to intimate that in all cases physical seizure constitutes arrest, or that seizure of an individual without probable cause always constitutes an improper arrest. *See, e.g., United States v. Haye*, 825 F.2d 32 (4th Cir.1987) (under some circumstances, seizure of individual may be required for investigatory stop). Accordingly, we must analyze the factual situation to determine whether at the time officer Bryan seized Bumpus, probable cause existed.

Bumpus contends that it did not. He argues that his abandonment of the pouch in which the cocaine was found was coerced by the illegal arrest, and that the warrantless search of the pouch was a violation of his rights under the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 8 of the Iowa Constitution. He further argues that even if the arrest was valid, the warrantless search of the pouch was impermissible since it was not justifiable under any of the exceptions to the warrant requirement.

Since we conclude that probable cause existed for Bumpus's arrest on narcotics charges at the time officer Bryan seized him and led him out of the bar, we must also conclude that his constitutional rights were not violated by an improper arrest. We also conclude that since his abandonment of the pouch containing the drugs was not the result of coercion, he lacks standing to challenge the search of the pouch.

### I. *Bumpus's Constitutional Rights were not Violated by the Warrantless Search.*

 When constitutional rights are at issue, this court will generally conduct a de novo review of the evidence. *See, e.g., State v. Niehaus*, 452 N.W.2d 184, 187 (Iowa 1990); *State v. Swaim*, 412 N.W.2d 568, 570 (Iowa 1987). A warrantless search or seizure is by definition invalid unless it comes within a recognized exception to constitutional warrant requirements. *State v. Eubanks*, 355 N.W.2d 57, 58 (Iowa 1984). The State must prove by a preponderance of the evidence that the search or seizure was lawful. *State v. Lamp*, 322 N.W.2d 48, 53 (Iowa 1982).

### A. *Probable cause existed at the time of arrest.*

 In making his argument, Bumpus relies on *People v. Washington*, 192 Cal. App.3d 1120, 236 Cal.Rptr. 840 (1 Dist. 1987). In that case, as in the one before

this court, officers observed a group of men engaged in what appeared to them to be a drug transaction. The transaction was occurring in an area where such transactions were commonplace. As the officers approached, one of the men, later identified as Washington, broke from the group and ran. One of the officers gave chase, demanding that the suspect stop. During the chase, Washington discarded several packets later found to contain drugs. *Id.* at 1122–23, 236 Cal.Rptr. at 841.

On appeal of the trial court's denial of Washington's motion to suppress, the appellate court held that at the moment when the officer began to give chase, Washington had been detained. *Id.* at 1125, 236 Cal.Rptr. at 843. The court did not determine that Washington was under arrest, but that his detention was pursuant to an investigatory stop. The court reasoned that the officer lacked a reasonable suspicion for detaining Washington. Consequently, the court held that the seized drugs were inadmissible. *Id.* at 1128, 236 Cal.Rptr. at 844.

Bumpus argues that his situation is nearly identical. We note that there are currently two lines of decisions emanating from the California appellate court system on this subject. *In re Christopher B.*, 219 Cal.App.3d 455, 268 Cal.Rptr. 8 (4th Dist. 1990), the most recently decided California case on the subject, severely questioned the reasoning behind the *Washington* decision. The court cited *Michigan v. Chesternut*, 486 U.S. 567, 108 S.Ct. 1975, 100 L.Ed.2d 565 (1988) for the proposition that chasing a subject did not constitute detention. *Id.* 219 Cal.App.3d at 461, 268 Cal.Rptr. at 13; *see also People v. Patrick*, 135 Cal.App.3d 290, 185 Cal.Rptr. 325 (Cal.App. 2nd Dist. 1982) (threat of detention does not constitute seizure). We agree with the California court that whatever vitality the reasoning behind the *Washington* decision might have had was nullified by the Supreme Court's decision in *Chesternut*.

■ We also disagree with the restrictive approach to a probable cause determination that Bumpus infers from the decision in *Washington*. The California court

determined that the factors relied upon by the officer in making his determination that Washington may have been involved in a crime were insufficient to prompt even a reasonable suspicion of criminal activity, since none of the factors, standing alone, could have substantiated a reasonable suspicion. *Id.* at 1123–24, 236 Cal.Rptr. at 842. As a consequence, the court focused almost exclusively on the officer's testimony that one of the primary factors he relied upon in deciding that a drug sale may have been occurring was that "[b]lack men ... in the area usually had something to hide if they ran from the police." *Id.* at 1123, 236 Cal.Rptr. at 841. As the court pointed out in its decision, such racial inferences are clearly impermissible in making a probable cause determination. *Id.* at 1128, 236 Cal. Rptr. at 845. No such racial motivation has been shown by the facts of this case.

■ We disagree with the California court in its apparent determination that the other factors the officers relied upon in determining probable cause were inapplicable simply because each, standing alone, was insufficient. Other courts within the California appellate system have also come to this conclusion. *See, e.g., In re Christopher B.*, 219 Cal.App.3d 455, 268 Cal.Rptr. 8 (4th Dist.1990); *People v. King*, 216 Cal. App.3d 1237, 265 Cal.Rptr. 370 (4 Dist. 1989). We conclude, therefore, that all the evidence available to an officer may be factored in when making a determination of probable cause, regardless of whether or not each component of that evidence would support probable cause by itself. *Cf. Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (probable cause to issue warrant dependent on totality of circumstances).

The evidence indicates that officers Stueckrath and Bryan relied upon a number of factors in determining to arrest Bumpus. First, the officers' experience with the specific location where the activity took place told them that drug transactions were an ongoing problem at the Another World Lounge. Second, Bumpus and his companions were crouched behind a car, passing something back and forth between

them. The officers testified that this type of activity indicates a drug transaction may be occurring. Third, when the officers approached, Bumpus took flight. Fourth, when officer Bryan followed Bumpus into the bar, Bumpus went to great lengths to conceal the black pouch he was holding in his hand. Officer Bryan testified that it appeared to him that Bumpus was trying to pass the pouch to someone else in the bar.

Bumpus correctly points out that standing alone, none of the factors cited above would rise to the level of probable cause for arrest. *See, e.g., United States v. Green,* 670 F.2d 1148, 1151–52 (4th Cir. 1981). It is clear, however, that several factors of this nature, when part of a pattern that indicates unlawful activity is occurring, give rise to probable cause. Probable cause is not determined by observation of and reliance on any particular factor. *See id.* at 1152. Probable cause to make an arrest turns upon the circumstances of each case. The facts must give rise to something more than a mere suspicion, but they need not be so strong as to convince officers involved in the arrest of a suspect's guilt. *State v. Gregory,* 327 N.W.2d 218, 220, *modified* 331 N.W.2d 140, *cert. denied,* 464 U.S. 833, 104 S.Ct. 115, 78 L.Ed.2d 115 (1982). Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it. *See United States v. Bubis,* 744 F.2d 61, 64 (8th Cir.1984); *State v. Shane,* 255 N.W.2d 324, 326 (Iowa 1977).

In *Green,* the federal court faced circumstances nearly identical to those found in the case at bar. There, a police officer stationed at an observation post investigating narcotics activity at a specific street corner observed three people passing concealed objects back and forth between them. The officer believed that their activities were consistent with a drug transaction. The officer then radioed to other officers stationed in an unmarked patrol car two blocks away. As the officers approached the suspects, one of them walked quickly down the street to a carry-out store, looking back over his shoulder at the pursuing officer as he did so. The suspect went into the carry-out store a few feet, made a furtive gesture with his right hand, and exited the carry-out store. The pursuing officer arrested him at that time, went into the store, and retrieved a brown paper bag containing fourteen small packets of heroin. *Id.* at 1150–51.

On review, the appellate court relied on the totality of the circumstances to conclude that the arrest was justified prior to the discovery of the heroin in the abandoned brown paper bag. *Id.* at 1151. The court relied on three factors, also present in this case, that justified the arrest. It noted that "a sequence of events which is typical of a common form of narcotics transaction may create a suspicion in a police officer's mind, but probable cause ... requires more than mere suspicion." *Id.* When officers Bryan and Stueckrath entered the Another World parking lot, having observed Bumpus and his associates engaged in what appeared to be a drug transaction, they did not have probable cause for an arrest.

Likewise, the furtive nature of the activity that Bumpus and his associates were engaged in did not, standing alone, give the officers probable cause for the arrest. *Id.* at 1152. The mere fact that Bumpus was engaged in such activities at a location notorious for drug related transactions was also insufficient, standing alone, to give rise to probable cause for an arrest. *Id.* These three factors did, however, create a reasonable and articulable cause for suspicion that criminal activity was taking place. *See Terry v. Ohio,* 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889, 904–05 (1968). The officers would have been justified at that time in making an investigatory stop, and attempted to do so.

It is a well-recognized principle that once a police officer has the requisite reasonable suspicion to make a "Terry stop," and the subject of that suspicion takes flight when approached by the officer, the circumstances may justify the officer in making an arrest. *See Kolender v.*

*Lawson,* 461 U.S. 352, 366 n. 4, 103 S.Ct. 1855, 1863 n. 4, 75 L.Ed.2d 903, 915 n. 4 (1983) (Brennan, J., concurring); *United States v. McFadden,* 722 F.Supp. 807, 809 (D.C.1989).

■ While flight alone does not give rise to probable cause, it may, when coupled with a preexisting reasonable suspicion "elevate the preexisting suspicion up to the requisite Fourth Amendment level of probable cause." *Id.* at 809–10. In this case not only did Bumpus flee from officers who had a reasonable and articulable suspicion that he was involved in a drug transaction, he attempted to pass a pouch he was carrying to another patron inside the bar into which he fled, and failing that, attempted to conceal the pouch. Thus, at the time officer Bryan seized Bumpus's arm and led him outside, probable cause for an arrest existed.

**B.** *The pouch containing narcotics was abandoned and Bumpus lacks standing to challenge the search.*

■ Bumpus points out that once he threw the pouch over the fence it was no longer within his control, and hence the search of the pouch cannot be justified as a search incident to arrest, one of the exceptions to the warrant requirement. *See State v. Schrier,* 283 N.W.2d 338, 342 (Iowa 1979) (search and seizure incident to lawful arrest unreasonable unless it is pursuant to recognized exception such as search incident to arrest, probable cause and exigent circumstances, or plain view.). He argues that even if the arrest was proper, the warrantless search was nevertheless improper.

■ We need not deal with this issue, however, since Bumpus lacked standing to challenge the search of the pouch, based upon his abandonment of the property. Voluntary abandonment of property in the constitutional sense occurs when an individual no longer has a reasonable expectation of privacy with regard to that property. *See United States v. Jackson,* 544 F.2d 407, 409 (9th Cir.1976). Once an individual voluntarily abandons property he or she no longer has standing to challenge

any search or seizure that may be made. *See id.; United States v. Tate,* 821 F.2d 1328, 1330 (8th Cir.1987), *cert. denied,* 484 U.S. 1011, 108 S.Ct. 712, 98 L.Ed.2d 662. In order to determine whether a person has voluntarily abandoned property in such a fashion as to preclude standing to challenge search and seizure, intent may be inferred from words, acts, and other objective facts. A lawful arrest does not in itself result in the type or quantum of compulsion that will render an abandonment involuntary. *United States v. Maryland,* 479 F.2d 566 (5th Cir.1973). Here, Bumpus was under arrest at the time he threw the pouch over the fence. It is clear that his intent was to rid himself of evidence of the crime with which he was ultimately charged. In doing so, his abandonment of the property was voluntary, since his intent was to place the property outside the realm of his control. Since he no longer wanted to be associated with the property, he could have no reasonable expectation of privacy in it. *Cf. Id.* at 568 (individual who stuffed counterfeit bills between cushions of rear seat of police car while under arrest had no reasonable expectation of privacy). We conclude, therefore, that Bumpus lacked standing to challenge the search and seizure of the pouch.

**II.** *The Trial Court Did Not Err in Accepting Defendant's Admission of His Prior Conviction for Purposes of Sentencing.*

■ Prior to trial, the State amended the trial information to include an allegation that Bumpus had been previously convicted of possession of a controlled substance with intent to deliver. The alleged conviction occurred in May 1982, and underpins the trial court's reliance on the sentencing enhancement provisions of Iowa Code section 204.411. At trial, the State introduced as an exhibit the judgment entry in the May 1982 conviction. The State also intended to introduce the testimony of Bumpus's attorney at the time of the May 1982 conviction to identify him as the same Claude Bumpus that she had represented. Before the presentation of this evidence,

however, Bumpus stipulated that he had, indeed, been convicted of the prior felony.

Bumpus argues that the trial court erred by accepting his admission because it did not point out to him the consequences of his choice. He contends that the failure to advise him of these consequences—the imposition of an enhanced sentence pursuant to Iowa Code section 204.411—was prejudicial. He argues that his previous attorney could not testify as to his identity, since she was precluded from doing so, and that absent her testimony the State had no way of proving identity.

In *State v. Brady*, 442 N.W.2d 57, 58 (Iowa 1989) we recognized the fact that an admission of prior felony convictions "which provide the predicate for sentencing as an habitual offender is so closely analogous to a plea of guilty" that our rules governing guilty pleas should be applied. Iowa Code section 204.411, which provides for the possibility of an enhanced sentence for an individual convicted of violating Iowa Code section 204.401(1)(a), is such a statute. *State v. Byers*, 456 N.W.2d 917 (Iowa 1990). Bumpus argues that as a result the trial court's failure to advise him specifically that his stipulation could result in a longer sentence deprived him of his rights pursuant to rule of criminal procedure 8(2)(b). He contends that he was prejudiced by this error since his former attorney could not testify against him.

In *Rand v. Ladd*, 238 Iowa 380, 390–91, 26 N.W.2d 107, 112–13 (1947), this court faced an analogous situation. In that case, Rand was found guilty at trial of a second violation of the intoxicating liquor laws then on the books. Rand had pled guilty to a previous violation of the same laws, and the question on review was whether the attorney who had represented him in the first case could testify as to his former client's identity. This court held that the fact of prior representation was no bar to the attorney's testimony. *Id.* at 391, 26 N.W.2d 107.

 This case has some similar properties in that Bumpus's former attorney would have testified only as to Bumpus's identity. It is clear that the attorney client

privilege is not implicated by his former attorney's testimony as to his identity. At the time of trial, however, that attorney was employed as an assistant Polk county attorney. Bumpus cites *State v. Orozco*, 202 N.W.2d 344, 345–46 (Iowa 1972) for the proposition that an attorney "may not participate in the prosecution of a criminal case if, by reason of personal relations with the accused, he has acquired knowledge of facts on which the prosecution is based or which are closely interwoven therewith, or has formally appeared for defendant...."

There is no indication in the record that Bumpus's former attorney took part in the prosecution of this case. Her only function was as an identification witness. The minutes of testimony make it clear that she would have testified only as to Bumpus's identity in connection with the earlier conviction. In addition, the State introduced a judgment entry recording Bumpus's previous conviction. Accordingly, no prejudice resulted from the trial court's failure to advise Bumpus of the consequences of his admission regarding the prior conviction.

III. *The Court did Not Err in its Application of the Sentencing Provisions of Iowa Code Chapter 204.*

 Bumpus also argues that the court incorrectly applied the minimum sentencing requirements of Iowa Code section 204.413 to his sentence. He argues that he was sentenced pursuant to Iowa Code section 204.411, and that by its terms section 204.-413 applies only to sentences carried out pursuant to Iowa Code section 204.401(1)(a) and (b). We recently confronted the identical argument in *State v. Byers*, 456 N.W.2d 917 (Iowa 1990). There we found that section 204.411 was not a sentencing provision in its own right, but an enhancement provision related to sentences delivered pursuant to section 204.401. We concluded in *Byers* that section 204.413 could be applied to a sentence under section 204.401(1)(a) that had been enhanced by application of section 204.411. *Id.* at 919; *see also State v. Smith*, 282 N.W.2d 138, 143 (Iowa 1979) (habitual offender statute does not create crime, but merely provides for enhanced

sentence). Given our ruling in *Byers*, Bumpus's contention is without merit.

### IV. *Bumpus was not Prejudiced By Ineffective Assistance of Counsel.*

 Bumpus also asks that the court preserve his claim to ineffective assistance of his trial counsel for post-conviction relief. He claims that his trial counsel's apparent failure to move for a directed verdict of acquittal, to make a motion for arrest of judgment, or to move for a new trial constitute ineffective assistance of counsel, since he is now precluded from raising challenges to the sufficiency of the evidence, and the validity of his admission regarding the prior conviction. Generally, ineffective assistance of counsel claims are best reserved for post conviction proceedings, in order for a more complete record to be developed on various issues. *See State v. Rawlings*, 402 N.W.2d 406, 408 (Iowa 1987). We have, however, reviewed such claims on direct appeal where the evidence available is sufficient to establish the validity of the claim. *State v. Hill*, 449 N.W.2d 626, 628 (Iowa 1989); *State v. Williams*, 409 N.W.2d 187, 188–89 (Iowa 1987).

 In order to prove ineffective assistance of counsel, Bumpus must show that his trial counsel failed to perform an essential duty and that he was prejudiced by counsel's omission. *State v. Miles*, 344 N.W.2d 231, 233–34 (Iowa 1984). We need not make a ruling on the first element of this claim before examining the prejudice requirement. *Taylor v. State*, 352 N.W.2d 683, 685 (Iowa 1984). He must show that there is a reasonable probability that but for his trial attorney's unprofessional errors, the resulting conviction and sentence would have been different. *Id.* A reasonable probability is one sufficient to undermine confidence in the outcome. *Id.* Because we conclude that it is impossible for Bumpus to show prejudice, we deny his ineffective assistance of counsel claims.

 The record before us is complete enough to establish overwhelmingly the sufficiency of the evidence to establish Bumpus's guilt for the crimes charged. Similarly, we have concluded that Bumpus

was not prejudiced by his admission as to the prior conviction.

We therefore conclude that the judgment of the trial court was correct and affirm Bumpus's conviction.

AFFIRMED.

All Justices concur except HARRIS, J., who concurs in the result only.