**IN THE COURT OF APPEALS OF IOWA**

No. 13-0988
Filed February 11, 2015

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DONALD B. E. REED,**
        Defendant-Appellant.
_____


        Appeal from the Iowa District Court for Black Hawk County, Todd A. Geer,

Judge.


        A defendant appeals his convictions and sentences.  **AFFIRMED.**


        Mark C. Smith, State Appellate Defender, and Patricia Reynolds, Assistant

Appellate Defender, for appellant.

        Thomas J. Miller, Attorney General, Linda J. Hines, Assistant Attorney

General, Thomas J. Ferguson, County Attorney, and Brad Walz, Assistant

County Attorney, for appellee.


        Heard by Vogel, P.J., and Vaitheswaran and Potterfield, JJ.

**VAITHESWARAN, J.**

A jury found Donald Reed guilty of (1) possession of more than ten grams of cocaine base with intent to deliver while in the immediate possession of a firearm, (2) a drug tax stamp violation, (3) possession of a firearm by a felon, (4) two counts of child endangerment, and (5) possession of marijuana. Reed separately pled guilty to being a second drug offender. He was sentenced to concurrent prison terms not exceeding 100 years, five years, five years, two years, two years, and 180 days, respectively. On appeal, Reed (1) challenges the sufficiency of the evidence supporting the jury's findings of guilt, (2) contends his trial attorney was ineffective in several respects, and (3) argues his 100-year sentence on the cocaine charge amounted to cruel and unusual punishment.

## I. Sufficiency of the Evidence

Reed argues all the charges fail based on an absence of proof he possessed drugs or guns. The jury was instructed on the definition of "possession," as follows:

> The word "possession" includes actual as well as constructive possession and also sole as well as joint possession.
> A person who has direct physical control of something on or around his person is in actual possession of it.
> A person who is not in actual possession, but who has knowledge of the presence of something and has the authority or right to maintain control of it either alone or together with someone else is in constructive possession of it.
> If one person alone has possession of something, possession is sole. If two or more persons share possession, possession is joint.

It is agreed this is a case of constructive rather than actual possession. Accordingly, pursuant to the definition above, the State had to prove Reed had knowledge of the presence of drugs and guns and the authority or right to

maintain control of them. Reed argues he did not live in the house, precluding a finding he constructively possessed the items discovered inside.

A reasonable juror could have found the following facts. Waterloo police department employees conducted surveillance of a home. They saw "short-term traffic" at the home and saw Reed "coming and going at different times" in a white Buick. According to an investigator, Reed "appeared to be stationed at the house." He did not ring a doorbell to gain access but "would just walk in." He stayed for extended periods of time and was observed taking out the trash.

Also in the home were a woman and two children. Reed was the father of one of the children. Reed and the woman lived together at other addresses, and both previously identified the same home address on government records. A search of trash uncovered a bill in the name of Reed and the woman.

Late one evening, the investigator saw the white Buick pull into the driveway. The car was still there the following morning. When the car pulled out in the morning, an officer stopped it, detained and searched Reed, and retrieved $532 from him. Reed made incriminating statements such as "I got to make sure that my girl, she—I mean, we've got to do it together or something, because, I mean, we can help you out dude," "We got kids," "The only thing, sir, me and my girl, we would help you."

Meanwhile, officers executed a search warrant on the home. In one of the bedrooms, they found a box of sandwich baggies "consistent with narcotics packaging and sales," "some ripped baggies," "more plastic baggies in a clothing drawer," a digital scale, a white powdery substance on top of a dresser, two guns, "a large quantity of crack cocaine inside a plastic baggie," and some

marijuana. The room contained male and female clothing, including a pair of large, obviously male jeans. Reed was described as a large man.

Based on this evidence, a reasonable juror could have found Reed had knowledge of the drugs and guns in the bedroom and the authority or right to maintain control over them. Although other males were associated with the house, a reasonable juror could have found their ties to be more tenuous. For example, a man whose identification card was in the bedroom was never seen at the house and a man in whose name the utilities were registered spent little time there. It was the jury's function to sort through this evidence and assign weight as it chose. *State v. Thornton*, 498 N.W.2d 670, 673 (Iowa 1993).

We recognize this case bears similarities to *State v. Webb*, 648 N.W.2d 72, 79 (Iowa 2002), in which the Iowa Supreme Court reversed a finding of constructive possession. However, unlike Webb, Reed was found to be a regular resident of the house and was observed leaving the house immediately prior to the search. *See Webb*, 648 N.W.2d at 79 ("The State presented no evidence about when [Webb] was last on the premises before the search."). Reed also made incriminating statements following his detention, whereas Webb did not. *Id.* at 80. ("When [Webb] arrived on the scene, Webb made no incriminating statements."). We conclude *Webb* is distinguishable. *See State v. Henderson*, 696 N.W.2d 5, 9-10 (Iowa 2005) (distinguishing *Webb* and stating defendant's conduct "implied guilty knowledge").

Examining the evidence in the light most favorable to the State, we conclude the jury's findings of possession were supported by substantial evidence.[1]

## II. Ineffective-Assistance Claims

Reed raises three ineffective-assistance-of-counsel claims. To prevail, he must show (1) counsel failed to perform an essential duty and (2) prejudice resulted. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Ordinarily, ineffective-assistance-of-counsel claims are preserved for postconviction-relief proceedings to allow a more complete development of the record. *State v. Bumpus*, 459 N.W.2d 619, 627 (Iowa 1990). We find the record adequate to address all three issues. Our review is de novo. *State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006).

### A. Failure to File Suppression Motion

Reed first contends his trial attorney was ineffective in failing to file a motion to suppress based on the insufficiency of the search warrant application. The application relied on information obtained from two confidential informants. Reed asserts the information was "vague, stale, and unverified" and did not "establish the credibility of the informants or the information given."

Prior to a 1998 amendment, the issuing magistrate was required to make a specific determination that "the information appears credible either because sworn testimony indicates that the informant has given reliable information on

---

[1] We note that at first blush, the facts of this case align closely with *State v. Newell*, No. 13-1436 (Iowa Ct. App. February 11, 2015). However, despite our differing conclusions, we would note that the cases were presented to us with distinct procedural postures, and importantly, different arguments.

previous occasions or because the informant or the information provided by the informant appears credible for reasons specified by the magistrate." *See* Iowa Code § 808.3 (1997); *see also* 1998 Iowa Acts ch. 1117, § 1; *State v. Myers*, 570 N.W.2d 70, 73 (Iowa 1997). The requirement was amended, and section 808.3 now states in pertinent part:

> [I]f the grounds for issuance are supplied by an informant, the magistrate shall identify only the peace officer to whom the information was given. *The application or sworn testimony supplied in support of the application must establish the credibility of the informant or the credibility of the information given by the informant.* The magistrate may in the magistrate's discretion require that a witness upon whom the applicant relies for information appear personally and be examined concerning the information.

*See* Iowa Code § 808.3 (2011) (emphasis added).

The search warrant application satisfied this standard. The application included attachments attesting to the reliability of two confidential informants. The officer making the attestations stated he had known informant number one for six years, the informant previously supplied information at least twenty-five times, and past information led to two arrests. While the officer said less about informant number two's reliability, he did attest to knowing the informant for three years and to being advised by the informant that Reed sold marijuana and crack cocaine and possessed a handgun at the house specified in the application.

The confidential informants' disclosures were corroborated by officers' search of the trash outside the home, which uncovered ripped sandwich bags consistent with drug dealing and the month-old bill linking Reed to the house. Officers also supervised a controlled purchase of marijuana by confidential informant number one.

We conclude the attachments to the search warrant application established the credibility of the confidential informants or the credibility of the information given, as required by section 808.3. Accordingly, Reed's trial attorney did not breach an essential duty in failing to file a motion to suppress.

## B. Failure to Investigate

Reed next asserts his trial attorney was ineffective in failing to present a more vigorous defense concerning where he lived. In his view, "[t]he jury heard only scant evidence that [he] did not live in the drug house." On our de novo review, we disagree.

Reed's attorney elicited admissions that Reed was seen at another house and his car registration listed the other house as his address. These admissions were later exploited by Reed's attorney during closing argument, when he lambasted the State's evidence tying Reed to the house.

We conclude Reed's attorney presented sufficient evidence from which a jury could have found nonresidence at the searched address. Accordingly, he did not breach an essential duty in failing to further investigate the matter.

## C. Failure to Object to Evidence

Reed argues his attorney was ineffective in failing to object to the admission of a cell phone photo of a large rifle. He asserts the picture unfairly prejudiced him by linking him to "a gun culture."

In fact, Reed's attorney did object to the pictures on the cell phone. He asserted, "I don't know that these pictures prove anything relevant in this case, and so their probative value is almost necessarily outweighed by their—the risks that they will be misused by the jury." The district court overruled the objection,

finding the photographs were not unfairly prejudicial. Because Reed's attorney objected to the photographs, which included the picture of the rifle, he did not breach an essential duty.

We conclude Reed's three ineffective-assistance-of-counsel claims fail on the breach-of-duty prong.

### III. Constitutional Challenge to Cocaine Sentence

As noted, Reed's sentence for the cocaine conviction was 100 years, calculated as follows. First, Reed's maximum sentence for the class "B" felony would have been no more than twenty-five years. Iowa Code § 902.9(1)(b). The sentence was doubled to no more than fifty years based on his possession of a firearm. Iowa Code § 124.401(1)(e). The sentence was doubled again pursuant to section 124.411, which afforded the court discretion to impose up to three times the indeterminate term of fifty years based on Reed's status as a second offender. Additionally, section 124.413 required the court to impose a mandatory minimum period of confinement of one-third the maximum indeterminate sentence.

Reed contends he "was denied the opportunity to present evidence that his enhanced sentence, based on a prior offense, which occurred when he was 17, was cruel and unusual under the Iowa Constitution in that it was grossly disproportional to his alleged crime." Reed relies on *State v. Bruegger*, 773 N.W.2d 862, 884 (Iowa 2009). There, the court held "at least in some instances, defendants who commit acts of lesser culpability within the scope of broad criminal statutes carrying stiff penalties should be able to launch an as-applied cruel and unusual punishment challenge." *Bruegger*, 773 N.W.2d at 884. The

court concluded Bruegger's case "involves an unusual combination of features that converge to generate a high risk of potential gross disproportionality— namely a broadly framed crime, the permissible use of preteen juvenile adjudications as prior convictions to enhance the crime, and a dramatic sentence enhancement for repeat offenders." *Id.*

*Bruegger* was finessed in *State v. Oliver*, 812 N.W.2d 636 (Iowa 2012). There, the court stated an "as-applied" challenge to a sentence "can be brought, regardless of the presence or absence of [the *Bruegger*] factors." *Oliver*, 812 N.W.2d at 651 n.12. The court nonetheless analyzed these factors, stating they bore on a threshold determination of whether to make an inference of gross disproportionality. *Id.* at 651. The court also considered the recidivism of the defendant, the breadth of the enhancement statute, the principle of deference to the legislature, and the rarity of circumstances supporting a finding of gross disproportionality. *Id.* at 650-52.

We begin with the *Bruegger* factors. There is no question Reed experienced a "dramatic sentence enhancement" based on his status as a repeat offender. Specifically, a term of up to fifty years was mandated, and the district court elected to double the sentence to a term of up to 100 years. However, the remaining factors do not lead to an inference of gross disproportionality. Reed was not convicted of a "broadly framed crime" covering "a wide variety of circumstances" but of a very specific offense: possession with intent to deliver "more than ten grams but not more than fifty grams of a mixture or substance . . . which contains cocaine base." Iowa Code § 124.401(1)(b)(3). Additionally, his prior offense was not a pre-teen juvenile adjudication but a conviction in adult

court as a young man just three months shy of his eighteenth birthday. In *Bruegger*, the twenty-one-year old defendant could not have been tried as an adult for the crime he committed as a twelve-year-old. 773 N.W.2d at 885. Twenty-eight-year-old Reed, in contrast, could be and was tried as an adult for the Wisconsin crime of manufacturing or delivering cocaine less than or equal to five grams. In sum, we do not have a confluence of the factors articulated in *Bruegger* which would lead to an inference of gross disproportionality.

We turn to the recidivism factor. In *Oliver*, the court determined the defendant's lengthy list of convictions did not "favor an inference of gross disproportionality." 812 N.W.2d at 652. Reed's criminal history is not as long but includes more recent convictions for burglary and assault causing bodily injury. We conclude his history does not favor an inference of gross disproportionality.

This brings us to the breadth of the enhancement statute. In *Oliver*, section 902.14—an enhancement statute providing for life without parole for certain second or subsequent offenses—was found to be narrower than the enhancement statute applied in *Bruegger* because it did not apply to juvenile adjudications and was limited to a small class of crimes. *Id.* at 652. Like section 902.14, the enhancement statute here—section 124.411—does not apply to juvenile adjudications. However, it covers convictions for a range of drug offenses from aggravated misdemeanors to class "B" felonies.[2] Iowa Code § 124.411.

---

[2] Section 124.411 does not apply to section 124.401(5), which, in part, addresses the punishment for marijuana crimes. Iowa Code §§ 124.401(e), .411.

Despite this difference, *Oliver*'s reiteration of the principle of deference to legislative penalties counsels against an inference of gross disproportionality, as does the court's focus on the rarity of such an inference. *See* 812 N.W.2d at 650. For these reasons, we conclude the cruel and unusual punishment clause of the Iowa Constitution did not require the district court to afford Reed an individualized evidentiary sentencing hearing.

We affirm Reed's judgment and sentences.

**AFFIRMED.**