# IN THE COURT OF APPEALS OF IOWA

No. 16-0136
Filed July 19, 2017

**DEWANN MARQUISE STONE SR.,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Polk County, Robert B. Hanson, Judge.

Appeal from the denial of application for postconviction relief filed pursuant to Iowa Code chapter 822 (2009). **AFFIRMED.**

Karmen Anderson of Karmen Anderson Law, Des Moines, for appellant.

Thomas J. Miller, Attorney General, and Sharon K. Hall, Assistant Attorney General, for appellee State.

Considered by Vogel, P.J., and Doyle and McDonald, JJ.

**MCDONALD, Judge.**

Dewann Stone Sr. was convicted of murder in the first degree, in violation of Iowa Code section 707.2 (2005), for the shooting of Anthony Galvan. This court affirmed his conviction on direct appeal. *See State v. Stone*, No. 07-1009, 2008 WL 4724865, at *1 (Iowa Ct. App. Oct. 29, 2008). The facts and circumstances of the case are set forth in our prior opinion and need not be repeated in full herein. In this appeal, Stone contends the district court erred in denying his application for postconviction relief.

I.

Stone's primary claim is the State suppressed certain evidence in violation of Stone's right to due process as set forth in *Brady v. Maryland*, 373 U.S. 83, 87 (1963). *See Aguilera v. State*, 807 N.W.2d 249, 252 (Iowa 2011) (discussing *Brady* violations). "To establish a *Brady* violation has occurred, [the defendant] must prove by a preponderance of the evidence (1) the prosecution suppressed evidence; (2) the evidence was favorable to the defendant; and (3) the evidence was material to the issue of guilt." *Id.* (quoting *DeSimone v. State*, 803 N.W.2d 97, 103 (Iowa 2011)) (alteration in original). The district court denied the claim. Our review is de novo. *Id.*

The factual predicate for Stone's primary claim arises out of and relates to the statements of a jailhouse informant, Derek Thompson. The Galvan shooting occurred in August of 2006. In early April 2007, Thompson sent a letter to the county attorney stating he had information about the shooting. At the time Thompson sent the letter he was being held in the Polk County Jail awaiting transfer to federal prison. The prosecutor did not provide Thompson's letter to

the defendant, but the prosecutor did notify the case agent, Detective David Seybert, of the letter. Seybert made arrangements with federal authorities to interview Thompson. The interview occurred on April 17, 2007. Thompson stated he happened upon Kyron Moore, a long-time friend and former roommate of Thompson's, in the visitor area of the jail in September or October of 2006. Thompson stated he and Moore spoke. During the conversation, according to Thompson, Moore admitted he "popped [Galvan]," meaning he shot Galvan. Seybert asked whether Moore provided any detail, and Thompson said no. Thompson told Seybert he knew Moore to "wolf," meaning Moore might make something up or exaggerate something to impress others. Seybert prepared a transcript and summary of his interview with Thompson. The prosecutor faxed a copy of the transcript and summary to Stone's trial attorneys the same day or the next day, April 17 or 18. Trial was scheduled to and did commence on April 23, 2007.

Stone contends the prosecutor suppressed the transcript and summary of the interview with Thompson. Evidence is suppressed when it is known by the prosecution, including all persons acting on behalf of the State, but unknown by the defense. *Harrington v. State*, 659 N.W.2d 509, 522 (Iowa 2003). Stone's claim is directly contradicted by the record. The record reflects the documents were faxed to Stone's lawyers immediately after the interview. The transmission of the information was acknowledged by the prosecutor and defense counsel on the morning of Stone's trial while making record on pending motions in limine. In addition, Stone had personal knowledge of Moore's purported confession long before Thompson contacted the prosecutor. Stone was arrested in the fall of

2006 and held at the Polk County Jail. Thompson and Stone were being held on the same floor of the jail. Thompson and Stone knew each other prior to being jailed—Thompson was friends with Stone's younger brother—and they spoke with each other while in the jail. In his deposition for the postconviction trial, Thompson testified he told Stone what Moore said immediately after Moore said it. Stone admitted during the postconviction trial that Thompson told him what Moore said at some point before his trial. Stone testified he never told his attorneys this information prior to trial. It is well settled "'[i]f the defendant either knew or should have known of the essential facts permitting him to take advantage of the evidence,' the evidence is not considered 'suppressed.'" *Id.* (quoting *Cornell v. State*, 430 N.W.2d 384, 385 (Iowa 1988)).

Stone contends the information should nonetheless be considered suppressed, within the meaning of our case law, because the information was disclosed only on the eve of trial. As a general rule, if the prosecution *delays* the disclosure of *Brady* material so significantly it prejudices the defendant's ability to use the information, then the material may be considered suppressed. *See State v. Clark*, 814 N.W.2d 551, 563 (Iowa 2012). Here, the prosecutor did not *delay* the disclosure of the information. Thompson notified the prosecutor he had information in early April of 2007. Detective Seybert made arrangements to interview Thompson expeditiously. Upon completion of the interview, the prosecutor immediately provided the information to defense counsel. In addition, as discussed above, according to Thompson, Stone knew this information in September or October of 2006.

The timing of the disclosure did not prejudice the defendant's ability to use the information. *See id.* The interview and report were short and did not require significant investigation. Even if did require some investigation, Moore could not confirm the purported confession. He had been murdered by the time Thompson disclosed the information. In addition, getting Thompson's testimony into evidence was difficult because of hearsay issues. Thompson's testimony lacked credibility. Jailhouse records showed Thompson and Moore were not ever held in the jail together. It seems improbable that Thompson would by happenstance bump into Moore in the visitor's area of the jail, Moore would confess to the murder, Thompson would immediately tell Stone, and Stone would do nothing with the information. Nonetheless, despite the evidentiary concerns, defense counsel tried to get the testimony into evidence, not to establish the truth of the matter asserted, but to establish the police failed to investigate a potential suspect. The district court would not allow the evidence for that purpose. There was no prejudice here.

Finally, Stone claims the prosecution's failure to disclose Thompson's letter to the defense independently constitutes a *Brady* violation because it triggered a duty to investigate and communicate. The letter was addressed to the county attorney.

> To: John P. Sarcone
>
> Or to whom it may concern[,] my name is Derek Thompson and I'm located at the Polk County Jail. I'm writing in regards to a homicide that took place in Des Moines August of 2006. I am currently in U.S. Marshal custody awaiting transport to federal prison. I've been cooperating with the government since [m]y arrest. I've been considered a reliable witness. If you can, I have some valuable information for you, send someone to speak with me in regards to

that issue. Thank you very much. The homicide that took place was at Southport Night Club.

We cannot conclude the failure to disclose this letter prior to trial constituted a *Brady* violation. On its face, the letter was not favorable to the defendant. The letter only notifies the prosecutor that Thompson possessed "valuable information" regarding the shooting. The letter does not indicate whether the valuable information was inculpatory or exculpatory. The letter also was not material to an issue of guilt. "Evidence is material when 'there is a reasonable probability that, had the evidence been disclosed, the result of the proceeding would have been different.'" *Harrington*, 659 N.W.2d at 523 (quoting *Cornell*, 430 N.W.2d at 386). Thompson's letter was immaterial. It contained no substantive information regarding the offense. At best, disclosure of the letter would have alerted Stone's lawyers to the existence of a potential witness two weeks prior to the time they received the transcript and summary of the interview. Stone's counsel testified she would not have altered the defense strategy or theory had she received a copy of this letter prior to trial.

II.

In his application for postconviction relief, Stone claimed his trial counsel were ineffective in responding to and using the information Thompson provided. The district court denied the claim. While postconviction rulings are generally reviewed for errors at law, we review claims of ineffective assistance of counsel de novo because of their basis in the Sixth Amendment. *See State v. Maxwell*, 743 N.W.2d 185, 195 (Iowa 2008).

To show he received ineffective assistance of counsel, Stone "must prove: (1) counsel failed to perform an essential duty and (2) prejudice resulted." *State v. Wills*, 696 N.W.2d 20, 22 (Iowa 2006) (citing *State v. Artzer*, 609 N.W.2d 526, 531 (Iowa 2000)).  To prove the first element, Stone must show counsel's performance fell below the standard of a reasonably competent attorney. *Ledezma v. State*, 626 N.W.2d 134, 142 (Iowa 2001).  When we begin our review, we assume Stone's counsel performed competently.  *Id.*  If the first element is proved, then Stone must show "that there was a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 143 (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

On de novo review of Stone's claims, we conclude Stone failed to establish an entitlement to postconviction relief due to constitutionally deficient counsel.  First, Stone's claims are predicated on factual assertions contrary to or unsupported by the record.  For example, contrary to Stone's position, it is clear from the trial record that both of his attorneys knew Detective Seybert interviewed Thompson and knew the substance of the interview.  The matter was discussed on the morning of trial while making record on motions in limine.  By way of another example, the defendant contends his lawyers never told him about Seybert's summary of the interview, preventing him from making a decision about how to proceed with the information.  It is clear, however, that Stone had actual knowledge of Thompson's statements months before his trial counsel and simply chose not to inform them of this information.  In addition, Stone was present on the morning of trial when the prosecutor and defense

counsel made a record regarding whether the defendant would be able to use the Thompson information at trial.

Second, Stone's trial counsel was aware of the information and made a strategic decision to not investigate the matter further. "Miscalculated trial strategies and mere mistakes in judgment normally do not rise to the level of ineffective assistance of counsel." *Lado v. State*, 804 N.W.2d 248, 251 (Iowa 2011) (quoting *Millam v. State*, 745 N.W.2d 719, 721 (Iowa 2008)). Stone's counsel testified the use of Thompson as a witness was riddled with problems. There were, in her judgment, insurmountable hearsay problems. There were, in her judgment, significant credibility problems. Moore was deceased and could not confirm the purported confession. Thompson had independent credibility problems. He was in federal custody awaiting transfer to federal prison. He was also good friends with Stone's brother. Nonetheless, Stone's lawyers tried to get the statements into evidence, not for the truth of the matter asserted, but to establish the police's investigation of the case was not thorough. The district court disallowed the evidence. We thus need not address the issue of whether Thompson's statements would have in fact been admissible. Because trial counsel based her strategy on a "thorough investigation of law and facts relevant to plausible options," her strategy is "virtually unchallengeable." *Ledezma*, 626 N.W.2d at 143.

Finally, Stone has not established prejudice. Stone's claims of ineffective assistance of counsel lack specificity, are conclusory, and fail to identify how counsel's performance made a difference in the outcome of the proceeding. In the absence of some specific claim that leads to identifiable prejudice, the district

court did not err in denying the claim. Further, and independently, there was strong evidence of Stone's guilt. *See State v. Bumpus*, 459 N.W.2d 619, 627 (Iowa 1990) (determining prejudice did not result given overwhelming evidence of guilt). Multiple eyewitnesses identified him at the scene of the crime. *Stone*, 2008 WL 472865, at *1. An eyewitness identified Stone as the shooter. *Id.* Stone confessed to the murder to one of his friends and requested the friend's assistance in disposing of evidence and getting out of town. *Id.* The friend's report to the police was credible because the friend knew non-public information regarding the murder. In particular, the friend reported the caliber of the murder weapon, which was non-public information at the time. *Id.* at *6.

### III.

Stone did raise an ineffective-assistance-of-counsel claim related to another confession; this confession purportedly made by Brian Miller. The record reflects a drug task force officer named Townes learned from his confidential informant that a woman named Jennifer Moore told the confidential informant that Brian Miller confessed involvement in killing Galvan. Stone contends his counsel failed to investigate the claim. As with his other arguments, this claim is belied by the record. Stone's trial counsel tried to use this information at trial to show the police did not conduct a thorough investigation because the police failed to follow this lead. Stone's counsel made an offer of proof, but the district court excluded the evidence. Stone has failed to establish a breach of duty. *See State v. Graves*, 668 N.W.2d 860, 869 (Iowa 2003) ("A defendant's inability to prove either element [of ineffective assistance] is fatal.").

IV.

Stone contends his postconviction counsel provided ineffective assistance. The constitutional right to counsel applies to the assistance of trial counsel and appellate counsel; there is no constitutional right to postconviction relief, postconviction counsel, or the effective assistance of postconviction counsel. *See Williams v. Pennsylvania*, 136 S. Ct. 1899, 1921 (2016) (Thomas, J., dissenting); *Montgomery v. Louisiana*, 136 S. Ct. 718, 746 (2016) (Thomas, J., dissenting) ("Because the Constitution does not require postconviction remedies, it certainly does not require postconviction courts to revisit every potential type of error."). The Iowa Supreme Court has recognized a statutory right to counsel in chapter 822 proceedings and a corresponding statutory right to the effective assistance of postconviction counsel. *See Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994). Claims of ineffective assistance of counsel are reviewed de novo. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006). This is true whether the claim of ineffective assistance of counsel arises under constitution or statute. *See Killings v. State*, No. 15-1061, 2017 WL 1735614, at *1 (Iowa Ct. App. May 3, 2017) ("Our review of ineffective-assistance claims—whether constitutional or statutory—is de novo.").

Stone makes several claims against his PCR counsel. The claims are not supported by the record. To the extent the claims are supported by the record, Stone has not demonstrated counsel breached a duty or he suffered prejudice. First, Stone argues his postconviction lawyers (there were two over the life of the case) took little action and did not communicate with Stone. This is contradicted by the numerous filings in the case, the depositions in the record, the trial

transcript, and Stone's testimony he had extensive contact with his lawyer in preparation for the postconviction trial. Second, Stone claims his counsel advocated against him when counsel conceded that certain subpoenas should be quashed. Stone does not contend his counsel's concession was erroneous. He also does not allege how this would have made a difference in the postconviction-relief proceeding. Third, Stone claims his postconviction counsel was ineffective in failing to establish exactly when Stone's trial counsel received the documents regarding Thompson. As set forth above, the record is clear on the issue. Postconviction counsel did not fail to perform an essential duty in failing to bring up a resolved issue. Further, there is no prejudice from the alleged breach. Fourth, Stone claims his postconviction counsel should have brought up the "Thompson information" at postconviction trial. It is not clear exactly what Stone means; however, it is clear the Thompson issue was fully litigated and resolved.

Stone next contends his postconviction counsel was ineffective in failing to obtain a ruling on another purported *Brady* violation. Specifically, Stone contends his counsel should have argued the State failed to produce the report regarding the confidential informant's statement concerning Brian Miller's purported involvement in the Galvan shooting. Even if counsel failed to preserve error on the issue, there is no prejudice. The testimony establishes there was no written report regarding the statement.

V.

In addition to the claims considered above, we have also considered Stone's pro se claims. They are merely permutations of the same claims

resolved above. He has not established an entitlement to postconviction relief.

For the foregoing reasons, we affirm the judgment of the district court.

**AFFIRMED.**