# IN THE COURT OF APPEALS OF IOWA

No. 22-0763
Filed April 12, 2023

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**JOSE JULIAN SANCHEZ,**
Defendant-Appellant.
_____

Appeal from the Iowa District Court for Tama County, Lars G. Anderson, Judge.

A defendant appeals his conviction for operating while intoxicated by challenging the denial of his motion to suppress. **AFFIRMED.**

Lucas L. Asbury (until withdrawal), Windsor Heights, and Richard Sucher of Trey Sucher Law, PLC, West Liberty, for appellant.

Brenna Bird, Attorney General, and Benjamin Parrott, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Schumacher and Ahlers, JJ.

**TABOR, Presiding Judge.**

Jose Julian Ovides Sanchez appeals his conviction for operating while intoxicated (OWI) first offense. Before trial, he moved to suppress evidence obtained following his arrest, which he contends was without probable cause. He also argued that field sobriety tests conducted after police said he was "going to jail" amounted to custodial interrogation. And, according to Sanchez, those test results should be suppressed because he did not receive *Miranda*[1] warnings.

The district court denied the suppression motion on both grounds. First, the court found probable cause for the OWI arrest. Second, the court cited precedent that field sobriety testing did not amount to interrogation. On appeal, Sanchez disputes those determinations. Because we reach the same conclusions as the district court, we affirm the suppression ruling and conviction.

## I.     Facts and Prior Proceedings

On Christmas night 2020, Sanchez drove his Chevy Silverado, without headlights, west in the eastbound lane of Highway 30. An oncoming Chrysler Town and Country swerved to avoid a head-on collision. Sanchez's red truck sideswiped the tan-colored van, which was carrying a family of four. The van's driver reported the hit and run to Tama County law enforcement.

While sheriff's deputy Travis Foster responded to the van driver's report, Meskwaki Nation police officer Robert Roquet stopped a red truck with a damaged driver's side mirror and tan paint transfer. The truck's driver was Sanchez. When Deputy Foster joined Officer Roquet about fifteen minutes later, Roquet said: "I

---

[1] *Miranda v. Arizona*, 384 U.S. 436 (1966).

can't smell anything on him." Roquet also told Foster that Sanchez did not speak English, but that Sanchez had called his wife to the scene to translate for him.

So first, Deputy Foster approached the wife's car, telling her that Sanchez "was involved in a hit and run . . . . He could've killed those people." Foster added: "there's a possibility he's intoxicated." The deputy then asked her to "come out here and talk to him." When they approached Sanchez's window, Foster noticed his eyes were bloodshot and watery. "He appeared tired and I could smell a strong odor of alcoholic beverage coming from his person." With his wife interpreting, Sanchez answered Deputy Foster's questions. Foster asked whether Sanchez had been drinking. After some hesitation, Sanchez admitted having "six or seven beers." When Foster asked Sanchez to leave the truck for field sobriety testing, the deputy caught a strong whiff of beer. As recorded on his body camera, Foster commented: "Now I can smell it. Holy moley."

Foster asked Sanchez's wife to translate the directions for the field sobriety tests. Before administering the horizontal gaze nystagmus (HGN) test, the deputy asked the wife if Sanchez had any "eye issues" or wore contacts or glasses. She responded that he did not. Despite his wife's translation, Sanchez did not follow the deputy's directions for the HGN test. The deputy repeatedly told Sanchez not to move his head and "to keep looking at my finger." Exasperated, the deputy said: "I've been doing this awhile and I know when people are messing around, okay, look at my finger." The deputy then resumed the HGN test. At the suppression hearing, the deputy testified that he could tell that Sanchez "had nystagmus" which

he described as an involuntary rhythmic motion of the eye that suggested intoxication. The deputy rated Sanchez as having six out of six clues on that test.[2]

The deputy then moved to the walk-and-turn test. Again, Sanchez did not readily comply with Deputy Foster's directions. Sanchez complained of the cold and asked for his coat. As Sanchez zipped up his coat, Foster said to another officer: "He's going to jail." The wife then told Sanchez: "Don't say another word." Sanchez responded: "No, it doesn't matter." The deputy continued to conduct the test, repeatedly telling Sanchez not to start the test until told to do so. Finally, Sanchez counted out his steps, turned around, and counted again. But the deputy commented: "Okay, well, you didn't do it right, but we're just gonna move on." At the suppression hearing, the deputy explained that Sanchez missed the heel-to-toe by more than half an inch, only took three steps, and "just spun" rather than turning as directed. In the deputy's opinion, Sanchez exhibited clues of intoxication.

The next test was the one-leg stand. The deputy instructed Sanchez to keep his hands at his side and to raise one leg six inches off the ground, then to count. Sanchez lifted his left leg and counted to four, before dropping the leg and starting over. The second time Sanchez counted to eight. The deputy testified that Sanchez's loss of balance was a sign of intoxication.

After those field sobriety tests, Deputy Foster asked Sanchez to perform a preliminary breath test (PBT). Sanchez tried to blow in the device two times, but the deputy could not obtain a useable sample.

---

[2] The deputy also discussed the results of his vertical gaze nystagmus test, telling the court that it indicated a "high dose" of alcohol in Sanchez's system.

Even without the PBT, Foster believed that he had enough evidence that Sanchez was "over the legal limit" and arrested him for OWI. At the station, Foster invoked implied consent and Sanchez submitted to a DataMaster breath test, which revealed a blood alcohol content of 0.165.

The State charged Sanchez with first-offense OWI, a serious misdemeanor, in violation of Iowa Code section 321J.2(2)(a) (2020).[3] After losing his suppression motion, Sanchez waived his right to a jury trial and agreed to a bench trial on the stipulated minutes of testimony. The district court returned a guilty verdict. Sanchez now appeals.

## II. Scope and Standard of Review

Because Sanchez challenges the district court's denial of his motion to suppress on constitutional grounds, our standard of review is de novo. *See State v. Hunter*, 947 N.W.2d 657, 660 (Iowa Ct. App. 2020). That standard means that we examine the entire record and conduct an independent evaluation of the totality of the circumstances. *Id.* The scope of evidence includes facts from both the suppression hearing and the bench trial. *Id.*

## III. Analysis

### A. Probable Cause

Sanchez first contests the probable cause for his arrest.[4] To determine whether Deputy Foster had probable cause, we examine the events prompting that

---

[3] The State charged Sanchez separately with three simple misdemeanors related to the collision with the van. He moved to sever those charges from the OWI, and the district court set them for trial on the magistrate docket.

[4] He cites both the Fourth Amendment and article I, section 8 of the Iowa Constitution. But he does not advocate for a separate analysis under the state constitution. So we will apply the same test to both constitutional claims. *See*

arrest and decide whether those facts, viewed objectively, amount to probable cause. *See Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). Probable cause is a "fluid concept" not "readily, or even usefully, reduced to a neat set of legal rules." *Illinois v. Gates*, 462 U.S. 213, 232 (1983). As the word "probable" suggests, it requires only a "probability or substantial chance of criminal activity" rather than "an actual showing of such activity." *Id.* In short, probable cause is not a "high bar." *Wesby*, 138 S. Ct. at 586.

In its suppression ruling, the district court listed five circumstances adding up to probable cause for the arrest:

- A vehicle matching Sanchez's vehicle's description was involved in a hit-and-run after driving on the wrong side of the road without its lights on late in the evening on Christmas day.
- Sanchez's vehicle had damage consistent with being the vehicle involved in the accident and had left the scene of the accident.
- Officer Foster smelled a strong odor of alcohol coming from Sanchez and observed that Sanchez appeared tired and had blood shot, red, and watery eyes.
- Sanchez admitted to drinking [six to seven] beers.
- Sanchez had failed both the horizontal and vertical gaze nystagmus tests.

Sanchez does not challenge the district court's first two bullet points.

On the third point, Deputy Foster's observation of indicators of intoxication, Sanchez accuses the district court of not considering Officer Roquet's countervailing admission that he did not detect the odor of alcoholic beverages

---

*State v. Christopher*, 757 N.W.2d 247, 250 (Iowa 2008) ("We have never interpreted article I, section 8 of the Iowa Constitution to require anything more than probable cause to arrest in a public place and decline to do so here."); *see also State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015) ("[W]hen a party does not argue an independent approach, we ordinarily apply the substantive federal standards but reserve the right to apply the standard in a fashion different from federal precedent." (internal quotation marks and citation omitted)).

when he stopped the pickup. But the district court *did* note that discrepancy. It just placed more weight on Foster's prolonged interactions with Sanchez. That consideration of the totality of circumstances was proper. *See State v. Bumpus*, 459 N.W.2d 619, 624 (Iowa 1990) ("Probable cause is not determined by observation of and reliance on any particular factor.").

On the fourth point, Sanchez's admission to drinking six or seven beers, he faults Deputy Foster for not asking about the time frame for consumption. He asserts: "It is a well-known fact that the body metabolizes alcohol over time." And he highlights that the arrest occurred on Christmas day, when all-day drinking would be more common. True, not knowing the timing detracts from the force of the admission. But that lack of knowledge does not mean we must ignore Sanchez's disclosure. The acknowledgment that he consumed six or seven beers may be viewed along with his erratic driving and the strong odor of alcoholic beverage that Foster noted coming from Sanchez after he exited the truck. *See State v. Harris,* 490 N.W.2d 561, 563 (Iowa 1992) ("All of the evidence available to the arresting officer may be considered, regardless of whether or not each component would support a finding of probable cause by itself.").

On the fifth point, Sanchez argues that the district court improperly considered the results of the horizontal and vertical gaze nystagmus tests. He insists he did not receive proper instructions on how to perform the tests because the deputy relied on Sanchez's wife to act as an interpreter.[5] As Sanchez

---

[5] Sanchez argues that his wife, by interpreting for the deputy, became a state actor. As the argument goes, her knowledge of "the inadequacy of the interpretation must be imputed to Deputy Foster." While creative, that argument does not advance Sanchez's position. We can see for ourselves from the deputy's body cam video

concedes on appeal, the district court considered his three objections to that arrangement: (1) that his wife answered the medical background questions; (2) that she did not accurately translate the instructions; and (3) that the deputy did not provide correct instructions. But after considering those objections, the court still believed Deputy Foster's testimony that he was able to secure accurate results from those tests. We defer to that implicit credibility determination. *See State v. Hunt*, 974 N.W.2d 493, 496 (Iowa 2022).

After viewing the totality of circumstances, we conclude that Deputy Foster had probable cause to arrest Sanchez for OWI. Most important, Sanchez drove his truck in a dangerous manner—without lights, in the wrong direction, toward oncoming traffic, resulting in a hit-and-run accident.[6] Such erratic behavior showed his impairment. *See State v. Truesdell*, 679 N.W.2d 611, 616 (Iowa 2004), *abrogated on other grounds by State v. Crawford*, 972 N.W.2d 189 (Iowa 2022). Second, we credit Deputy Foster's observations that Sanchez had bloodshot, watery eyes and smelled strongly of alcoholic beverages. *See State v. Pieper*, 432 N.W.2d 701, 704 (Iowa Ct. App. 1988) (counting red, watery eyes and odor of alcoholic beverage as indicia of intoxication). Third, we believe that his admission

---

that Sanchez understood the deputy's commands during the HGN testing. And like the district court, we find *State v. Quintero-Labrada* to be persuasive authority. No. 19-0544, 2020 WL 6482726 (Iowa Ct. App. Nov. 2, 2020). There, we rejected an argument that field sobriety tests should be suppressed because the officer did not adequately communicate the instructions to a Spanish-speaking suspect. *Id.* at *2 (noting that any flaws in administration of field sobriety tests affect the weight we give to their results and not their admissibility).

[6] The State argues that Sanchez's conduct in leaving the scene of an accident provided separate probable cause for his arrest. We need not reach that question. But leaving the scene did contribute to the probable cause finding for the OWI arrest. *See State v. Lovig*, 675 N.W.2d 557, 565 (Iowa 2004).

to drinking a six pack or more of beer contributes to the probable cause finding, even without a specified time frame. *See People v. McKown*, 924 N.E.2d 941, 954 (Ill. 2010) ("[A]ny evidence of alcohol consumption is relevant to the question of impairment."). And finally, after viewing the body cam video of the HGN test, we find that Sanchez eventually did follow Deputy Foster's commands and the deputy could determine that Sanchez's eye movements signaled intoxication. Ample evidence supported probable cause for the arrest.

### B. Miranda Rights

Sanchez next claims that the field sobriety tests conducted after Deputy Foster said he was "going to jail" constituted custodial interrogation. Because he did not receive *Miranda* warnings, Sanchez argues the testing violated his right against self-incrimination.[7]

Assuming without deciding that Sanchez was in custody at that point in the investigation, requesting that he provide non-testimonial evidence did not lead to a Fifth Amendment violation. *See State v. Marks*, 644 N.W.2d 35, 37 (Iowa Ct. App. 2002); *see also State v. Mannion*, 414 N.W.2d 119, 122 (Iowa 1987) (holding request to perform sobriety tests was not interrogation). Because there was no interrogation, Sanchez cannot show a constitutional violation.

---

[7] Sanchez relies on the Fifth and Fourteenth Amendments to the U.S. Constitution, as well as article I, section 9 of the Iowa Constitution. But, again, he does not argue for a different result under the state constitution. And we have treated those constitutional claims alike. *See State v. Dewbre,* ___ N.W.2d ___, ___, 2022 WL 10861226, at *4 (Iowa Ct. App. 2022).

**C. Summary**

Because probable cause existed for the arrest and no *Miranda* violation occurred, the district court properly denied the suppression motion. Thus, we do not disturb Sanchez's OWI conviction.

**AFFIRMED.**