# IN THE SUPREME COURT OF IOWA

No. 17–0622

Filed March 29, 2019

**STATE OF IOWA,**

Appellee,

vs.

**JUSTIN ANDRE BAKER,**

Appellant.

___

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Black Hawk County, Joel A. Dalrymple and George L. Stigler, Judges.

A defendant seeks further review of a court of appeals decision affirming his convictions and sentences. **DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

Mark C. Smith, State Appellate Defender (until withdrawal), and Martha J. Lucey, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Genevieve Reinkoester, Assistant Attorney General, Brian J. Williams, County Attorney, and Jeremy Westendorf, Assistant County Attorney, for appellee.

**WIGGINS, Justice.**

A defendant appeals his convictions following judgment and sentence for the charges of driving while license barred, possession of marijuana, possession with intent to deliver marijuana, and failure to affix a drug tax stamp. He first argues the district court erred in denying his motion to suppress evidence because the police seized him in violation of the Fourth Amendment to the United States Constitution and article I, section 8 to the Iowa Constitution. Next, he argues the warrant used to search his residence lacked sufficient probable cause. He also argues his guilty pleas for driving while license barred and possession of marijuana were involuntary because trial counsel was ineffective for failing to move to suppress evidence before he entered his pleas. Lastly, he argues the district court abused its discretion when it imposed the sentence.

On appeal, we affirm the decision of the court of appeals and the judgment of the district court. We find the officers had reasonable suspicion to conduct the traffic stop of Baker's vehicle; therefore, the court was not required to suppress the evidence obtained from the stop. Because of this finding, we also find counsel was not ineffective in failing to file a motion to suppress prior to Baker's guilty pleas for driving while license barred and possession of marijuana. We further find the district court had a substantial basis for determining probable cause existed to support the warrant the police executed on 702 Ricker Street in Waterloo, Iowa. Therefore, it was not required to suppress the evidence obtained from the search of the residence. Lastly, we will let the court of appeals decision that the district court did not abuse its discretion in imposing Baker's sentence stand as the final decision of this court.

### I. Background Facts.

In August 2015, a Nevada State Trooper informed Officer Michael Girsch of the Waterloo Police Department that officers from the State of Nevada stopped a vehicle occupied by three Waterloo residents and the vehicle contained a large distributional quantity of marijuana and marijuana edibles. The Nevada officers placed all three individuals under arrest. The defendant, Justin Baker, was one of them.

In April 2016, while Girsch was conducting undercover surveillance in an unrelated investigation, he spotted Baker's vehicle near the 700 block of Ricker Street. Girsch said he believed Baker identified him as an officer and drove away. Girsch said, "[I]t appeared once he saw me sitting there, it appeared as though it had alerted him or scared him for some reason because it was my belief that his intention was to go to 702 Ricker Street." Girsch moved to a different position and continued to watch Baker, who circled back around and pulled into the driveway of 702 Ricker Street.

On April 18, Black Hawk County Sheriff Officer Matthew Isley received an anonymous phone call from someone who told Isley he or she had been at 702 Ricker Street in the past few days and had seen there was a distributional amount of marijuana at the residence. The anonymous tipster told Isley that Baker and Baker's niece, Shana Caldwell, were living at the residence and that Baker and Caldwell told the tipster they had recently returned to town with a shipment of marijuana. The tipster told Isley he or she suspected Baker and Caldwell were dealing drugs.

The same day, Isley informed Girsch of the anonymous call Isley received because both officers were working on the Tri-County Drug Enforcement Task Force. Based on the anonymous tip and the information they received from the Nevada State Trooper, Isley and Girsch

decided to conduct surveillance on Baker and Caldwell at their 702 Ricker Street residence.

While conducting surveillance, the officers saw Baker enter the house and then leave in his vehicle twenty minutes later. Both officers followed Baker. Girsch observed Baker park in an alley and speak with one or two individuals for only thirty seconds. Isley saw a male stick his hand in the passenger side of Baker's vehicle, immediately pull his hand back out, and then put his hand into his pocket. Isley never saw any drugs but identified this as a hand-to-hand drug transaction. Based on this, the officers directed Sergeant Steven Bose of the Waterloo Police Department to initiate a traffic stop on Baker's vehicle.

Bose activated his emergency lights while behind Baker's vehicle. Baker took an inordinate amount of time to roll to a stop and threw a small bag of marijuana out the window of his vehicle. Bose confirmed Baker was driving while his license was suspended. Bose recovered the marijuana then placed Baker under arrest. Baker had $200 in twenty-dollar bills on his person. Due to Baker's slow roll to a stop, officers were concerned Baker had called or texted other people who were also involved in selling narcotics. The officers believed others might have been destroying evidence at 702 Ricker Street and went to the residence to secure the premises.

Caldwell opened the door of her home when officers arrived. She told them they could not enter without a warrant. The officers entered the residence anyway. Inside, officers found narcotics and items consistent with the sale of narcotics. After the traffic stop, Isley and Girsch prepared a warrant application for a search of 702 Ricker Street, which the court granted. The officers executed the warrant the same day. Upon reentering the residence, officers seized a distributional amount of marijuana.

## II. Proceedings.

The State charged Baker with five counts. On May 17, in count I, the State charged him with driving while license barred in violation of Iowa Code sections 321.555 and 321.561 (2016), an aggravated misdemeanor. In count II, the State charged him with possession of marijuana, second offense, as a serious misdemeanor in violation of section 124.401(5). On May 18, the State charged Baker with two more counts. In count I, the State charged him with possession of marijuana with intent to deliver, a class "D" felony, in violation of section 124.401(1)(d). In count II, the State charged him with a drug tax stamp violation, a class "D" felony, in violation of section 453B.12. On November 2, the State charged Baker with another count of driving while license barred for acts alleged to have occurred on September 28.

Baker filed a motion to suppress evidence.[1] In the motion, he asserted the officers lacked probable cause to execute the traffic stop on April 18 and any evidence stemming from the stop was fruit of the poisonous tree. He also asserted the officers' warrantless entry into 702 Ricker Street violated his constitutional rights. Therefore, he argued, because the traffic stop and warrantless entry provided the basis for the warrant that was ultimately granted and executed, the evidence obtained by the warrant was also tainted.

The court granted Baker's motion regarding the warrantless search of 702 Ricker Street, finding exigent circumstances did not support the protective sweep. The court denied Baker's motion on the other two issues. It found the stop of Baker's vehicle was supported by reasonable

---

[1]Baker filed the motion jointly with Shana Caldwell, who faced the same charges of possession of marijuana with intent to deliver and a drug tax stamp violation. The motion to suppress only related to these two charges. Baker filed no such motion for the driving while license barred or the possession of marijuana charges.

suspicion based on the information of Baker's arrest in Nevada, the anonymous tip, and Isley's observation of what he believed to be a narcotics transaction. On the search-by-warrant challenge, the court found that officers made the decision to obtain a warrant prior to their initial entry into 702 Ricker Street. The court determined that without considering facts obtained during the illegal entry and search, probable cause still existed to grant the warrant.

On January 24, 2017, a jury trial began for the charges of possession of marijuana with intent to deliver and violation of a drug tax stamp. The jury found Baker guilty of both charges. Baker pled guilty to the two misdemeanor charges of driving while license barred and the one misdemeanor charge of possession of marijuana.

The court sentenced Baker on all five charges. The court sentenced Baker to five years imprisonment for the possession of marijuana with intent to deliver and five years for the drug tax stamp violation. For the misdemeanor charges, the court sentenced Baker to prison for one year for each count. The court ordered Baker to serve his sentences concurrently.

Baker appealed. The court of appeals upheld his convictions and sentences. Baker filed an application for further review, which we granted.

**III. Issues.**

We consider four issues. First, whether the district court erred in denying Baker's motion to suppress evidence because the investigatory stop of Baker was not supported by reasonable suspicion. Second, whether the district court erred in denying Baker's motion to suppress evidence obtained at 702 Ricker Street because probable cause did not exist to support the issuance of the warrant. Third, whether Baker's counsel was ineffective for failing to move to suppress evidence before

Baker pled guilty to driving while license barred and possession of marijuana. Fourth, whether the district court abused its discretion when it sentenced Baker.

"On further review, we have the discretion to review all or some of the issues raised on appeal or in the application for further review." *State v. Clay*, 824 N.W.2d 488, 494 (Iowa 2012). In exercising our discretion, we will not address the sentencing issue and let the court of appeals decision stand as the final decision of this court as to whether the district court abused its discretion when it sentenced Baker.

**IV. Whether the District Court Erred in Denying Baker's Motions to Suppress Evidence.**

Baker argues the district court erred in denying his motions to suppress evidence under the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution because officers obtained evidence from an illegal stop of his vehicle and from an illegal search of 702 Ricker Street.

**A. Standard of Review.** Our review of challenges to a ruling on the merits of a motion to suppress is de novo because such claims implicate constitutional issues. *State v. Ortiz*, 766 N.W.2d 244, 249 (Iowa 2009). "We make an 'independent evaluation of the totality of the circumstances as shown by the entire record.'" *State v. Scheffert*, 910 N.W.2d 577, 581 (Iowa 2018) (quoting *State v. Tague*, 676 N.W.2d 197, 201 (Iowa 2004)). "We give deference to the district court's factual findings, but they do not bind us." *Id.*

Baker argues officers had neither reasonable suspicion to warrant a traffic stop, nor probable cause for the warrant, and thus officers violated his rights to be free from illegal search and seizure under both the Iowa and Federal Constitutions. When a defendant raises both federal and state

constitutional claims, we have discretion to consider either claim first or both claims simultaneously. *State v. Ochoa*, 792 N.W.2d 260, 267 (Iowa 2010). Because in some instances we have found the Iowa Constitution's search and seizure provisions to afford more protections than its federal counterpart does, we could choose to analyze the claim under the Iowa Constitution first. *See id.* at 291 (declining to follow the Supreme Court by rejecting notion that parolees may be subject to broad, warrantless searches by law enforcement); *State v. Cline*, 617 N.W.2d 277, 278 (Iowa 2000) (declining to follow the Supreme Court by rejecting a good faith exception to the exclusionary rule in search and seizure cases under article I, section 8), *abrogated on other grounds by State v. Turner*, 630 N.W.2d 601, 606 n.2 (Iowa 2001).

Here, counsel does not advance a distinct analytical framework under the Iowa Constitution. He argues the federal framework under both the Federal and Iowa Constitutions. When counsel does not advance a distinct analytical framework under a parallel state constitutional provision, we ordinarily exercise prudence by applying the federal framework to our analysis of the state constitutional claim, but we may diverge from federal caselaw in our application of that framework under the state constitution. *See In re Det. of Matlock*, 860 N.W.2d 898, 903 (Iowa 2015); *State v. Short*, 851 N.W.2d 474, 491 (Iowa 2014); *State v. Baldon*, 829 N.W.2d 785, 822–23 (Iowa 2013) (Appel, J., concurring specially); *State v. Bruegger*, 773 N.W.2d 862, 883 (Iowa 2009); *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 6–7 (Iowa 2004). Because Baker did not advance a distinct analytical framework for his claim under article I, section 8 of the Iowa Constitution, in our discretion we choose to apply the federal framework applied to claims under the Fourth

Amendment to the United States Constitution in considering his state constitutional claim.

**B. Applicable Law on Search and Seizure.** The Fourth Amendment of the United States Constitution protects persons from unreasonable searches and seizures and requires a search warrant to be supported by probable cause. U.S. Const. amend. IV. The Iowa Constitution similarly protects persons from unreasonable searches and seizures. Iowa Const. art. I, § 8. Warrantless searches and seizures are per se unreasonable unless they fall under one of the recognized exceptions to the warrant requirement. *State v. Canas,* 597 N.W.2d 488, 492 (Iowa 1999), *abrogated on other grounds by Turner,* 630 N.W.2d at 606 n.2.

One recognized exception allows an officer to stop an individual or vehicle for investigatory purposes for a brief detention based only on a reasonable suspicion that a criminal act has occurred or is occurring. *State v. Kinkead,* 570 N.W.2d 97, 100 (Iowa 1997) (citing *Terry v. Ohio,* 392 U.S. 1, 21–22, 88 S. Ct. 1868, 1880 (1968)). "The purpose of an investigatory stop is to allow a police officer to confirm or dispel suspicions of criminal activity through reasonable questioning." *State v. Kreps,* 650 N.W.2d 636, 641 (Iowa 2002). This stop is a brief detention, and therefore "[a]n officer may make an investigatory stop with 'considerably less than proof of wrongdoing by a preponderance of the evidence.' " *Id.* at 642 (quoting *State v. Richardson,* 501 N.W.2d 495, 496–97 (Iowa 1993) (per curiam)).

However, while brief and for a limited purpose, such a stop and detention is a "seizure" within the meaning of the Fourth Amendment and article I, section 8. *State v. Heminover,* 619 N.W.2d 353, 357 (Iowa 2000) (en banc), *abrogated on other grounds by Turner,* 630 N.W.2d at 606 n.2.

Therefore, to justify an investigatory stop, an officer must have reasonable suspicion, backed by specific and articulable facts, to believe criminal activity is afoot. *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880. "Circumstances raising mere suspicion or curiosity are not enough." *Heminover*, 619 N.W.2d at 357–58.

**C. Whether the Seizure of Baker's Vehicle Was Supported by Reasonable Suspicion.** To justify an investigatory stop, the State must prove by a preponderance of the evidence that the stopping officer had "specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant[ed] that intrusion." *Id.* at 357 (quoting *Terry*, 392 U.S. at 21, 88 S. Ct. at 1880). We consider the circumstances under which the stop was made in light of the totality of the circumstances confronting the stopping officer, including all information available to the officer when he decided to make the stop. *Kreps*, 650 N.W.2d at 647. "We view those circumstances through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *Id.* Reasonable suspicion of a crime allows an officer to stop and briefly detain a person to conduct further investigation, while probable cause of a crime supports an arrest. *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015).

In *McIver*, we found an officer had reasonable suspicion to stop a driver's vehicle. *Id.* at 702–03. There, the stop occurred shortly after the city bars closed for the night, and the officer testified it was not uncommon for vehicles at this time to pull off the road and stop to allow intoxicated occupants to urinate outside the vehicle. *Id.* Further, the officer observed the vehicle parked in a closed business's parking lot. *Id.* at 702. We said, "While these circumstances alone would be insufficient to support reasonable suspicion, they were relevant considerations." *Id.* at 703. We

also noted that the driver drove over the grass and onto the sidewalk and curb as the vehicle left the parking lot and that the vehicle weaved within the lane of travel as the officer followed it. *Id.* Thus, considering all the circumstances together, we found the officer had a reasonable suspicion the driver was operating while intoxicated. *Id.*

In *State v. Kooima*, we reversed a district court decision denying a motion to suppress evidence because we found the police illegally seized the defendant. 833 N.W.2d 202, 210–11 (Iowa 2013). In that case, an officer stopped a vehicle after police received an anonymous tip that the driver was intoxicated. *Id.* at 203. An officer followed the vehicle, which made no traffic violations, and then stopped the vehicle based on the anonymous tip alone. *Id.* at 205. We held the anonymous tip without the requisite indicia of reliability and no other facts to support reasonable suspicion did not support the investigatory stop. *Id.* at 211–12.

In contrast, in *Kreps*, we held an officer did have reasonable suspicion to conduct an investigatory stop of a vehicle. *See* 650 N.W.2d at 648. In that case, an officer began following a vehicle at 2 a.m. and the vehicle began speeding up. *Id.* at 647–48. The vehicle made a complete circle and then a passenger exited the vehicle while it was still in motion and ran from the vehicle between houses. *Id.* at 648. At that point, the officer stopped the vehicle and found the driver was intoxicated. *Id.* We held that because the officer had reason to suspect that either the passenger or driver, or both, was engaging in criminal activity, the officer was allowed to pursue the vehicle, "stop, investigate, and resolve the ambiguity." *Id.*

In *State v. Bumpus*, we also held an officer had reasonable suspicion to conduct an investigatory stop. 459 N.W.2d 619, 621 (Iowa 1990). In that case, two officers were driving on patrol at 11 p.m. when they noticed

three men in a lounge parking lot crouching behind a car. *Id.* One officer recognized the defendant, while another officer recognized one of the other men. *Id.* The officers observed the men exchanging something but never saw exactly what it was. *Id.* The lounge the men were near was a notorious site for drug transactions, and based on this, plus "the nature and furtiveness of the actions" of the men and the lateness of the hour, the officers pulled their patrol car into the lot to investigate. *Id.*

As the officers entered the lot, the defendant began to run away. *Id.* One officer followed the defendant into the lounge, where the defendant tried to conceal a black pouch from the officer. *Id.* After the defendant failed to comply with the officer's request to come outside, the officer seized the defendant by the arm and led him out of the lounge. *Id.* The defendant threw the black pouch over a fence, but officers retrieved it and found forty-nine individual portions of crack cocaine. *Id.*

The defendant appealed his conviction and sentence for possession of cocaine with intent to deliver. *Id.* at 622. He argued the officer lacked probable cause to arrest him, and thus the court should have suppressed the cocaine evidence. *Id.* at 622–23. We said that when the officers entered the lounge parking lot, having observed the defendant and other two men engaged in what appeared to be a drug transaction, the officers did not have probable cause for an arrest. *Id.* at 624. The officers did have, however, reasonable suspicion that a drug transaction did occur and they were justified in conducting an investigatory stop. *Id.*

Here, considering all of the information the officer had when he stopped Baker's vehicle, we find the officer had reasonable suspicion to conduct the investigatory stop. *See Kreps*, 650 N.W.2d at 647–48. Isley and Girsch directed Bose to make the traffic stop after Isley witnessed what he believed to be a hand-to-hand drug transaction in an alley. Isley

based his belief on his experience of more than ten years in law enforcement, including his experience for over two years on the Drug Enforcement Task Force. *See United States v. Arvizu,* 534 U.S. 266, 273, 122 S. Ct. 744, 750–51 (2002) (explaining that reasonable suspicion is derived from an officer's "own experience and specialized training to make inferences from and deductions about the cumulative information available to them that 'might well elude an untrained person.' " (quoting *United States v. Cortez,* 449 U.S. 411, 418, 101 S. Ct. 690, 695 (1981))).

In addition to Isley witnessing what he believed to be a hand-to-hand drug transaction, Isley and Girsch were aware of other facts that supported the conclusion they had reasonable suspicion of criminal activity. First, Girsch saw Baker acting suspiciously near 702 Ricker Street just two weeks prior to Baker's arrest. Second, an anonymous caller reported that Baker had just returned to town with a large shipment of marijuana and that there was a large quantity of marijuana at the Ricker Street house. After receiving the tip, the investigators conducted surveillance of 702 Ricker Street, during which time they saw Baker leave the residence and then engage in what Isley believed to be a hand-to-hand drug transaction. While these circumstances alone may not rise to the level of reasonable suspicion, we consider the "totality of the circumstances." *McIver,* 858 N.W.2d at 703; *Kreps,* 650 N.W.2d at 642.

Unlike *Kooima,* where we found an anonymous tip alone did not rise to reasonable suspicion to stop a vehicle, *see* 833 N.W.2d at 210–11, here, the anonymous tip was corroborated by the other facts known by officers, *see Alabama v. White,* 496 U.S. 325, 326–27, 110 S. Ct. 2412, 2414 (1990) (finding anonymous tip rose to the level of reasonable suspicion when corroborated by independent police work verifying some information from the tipster). Like in *Kreps,* where an officer became suspicious of a vehicle

that seemed to evade him, *see* 650 N.W.2d at 647–48, here, Baker tried to evade Girsch on a previous occasion while going to 702 Ricker Street. The officers in the present case had just as many or even more facts lending to reasonable suspicion than the officer in *Kreps*. *See id.*

As for the officer's purpose of stopping Baker, it is clear the purpose was to investigate whether Baker was selling narcotics from his vehicle. All of the information known to officers provided reasonable suspicion that Baker was involved in narcotics sales, and therefore, they were justified to "stop, investigate, and resolve the ambiguity." *Kreps*, 650 N.W.2d at 648; *cf. State v. Tyler*, 830 N.W.2d 288, 298 (Iowa 2013) (holding officer did not have reasonable suspicion to conduct an investigatory stop where the stop was not for the purpose of investigating an ongoing crime).

Therefore, assessing the facts known to the officer under the totality of the circumstances, we find the officer had reasonable suspicion to conduct an investigatory stop of Baker in his vehicle. Accordingly, the district court did not err in denying Baker's motion to suppress evidence obtained as a result of the traffic stop.[2]

**D. Whether Probable Cause Supported the Issuance of a Warrant to Search 702 Ricker Street.** A search warrant must be supported by probable cause. Iowa Const. art. I, § 8. We use the totality-of-the-circumstances standard to determine whether officers established probable cause for issuance of a search warrant. *State v. Davis*, 679 N.W.2d 651, 656 (Iowa 2004). The test for probable cause is "whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence of a crime could be located there."

---

[2]As Baker was stopping, he threw a bag of marijuana out of his vehicle's window. Bose recovered the marijuana and placed Baker under arrest. Because Baker had the bag of marijuana in violation of Iowa law, Bose had probable cause to arrest Baker. This argument was reached by the court of appeals, which we will not disturb.

*State v. Gogg*, 561 N.W.2d 360, 363 (Iowa 1997) (quoting *State v. Weir*, 414 N.W.2d 327, 330 (Iowa 1987)). The issuing court must make a probability determination that the items sought are connected to criminal activity and the items will be found in the place to be searched. *Id.* The judge " 'is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information,' probable cause exists." *Id.* (quoting *Illinois v. Gates*, 462 U.S. 213, 238, 103 S. Ct. 2317, 2332 (1983)).

In determining whether there was probable cause for a warrant, we review the information actually presented to the judge and determine whether the issuing judge had a substantial basis for concluding that probable cause existed. *State v. McNeal*, 867 N.W.2d 91, 99 (Iowa 2015). In reviewing the warrant application, we interpret the affidavit of probable cause in a common sense, rather than in a highly technical manner. *Id.* at 100. We draw all reasonable inferences to support the judge's finding of probable cause and decide close cases in favor of upholding the validity of the warrant. *Gogg*, 561 N.W.2d at 364.

Baker makes several arguments for why probable cause did not exist to support a search warrant. He argues first that the marijuana recovered after the stop of Baker's vehicle must be suppressed because Baker was illegally seized. As we said above, we find the officer had reasonable suspicion that criminal activity was afoot to conduct the traffic stop, and therefore, we will consider the marijuana recovered from the traffic stop as part of the warrant application.

Baker also argues officers omitted material information from the warrant application. To challenge the veracity of a warrant application, a defendant normally must make a preliminary showing under oath that an

applicant for a warrant intentionally made false or untrue statements or otherwise practiced fraud upon the magistrate or that a material statement made by such applicant is false, whether intentional or not. *State v. Boyd*, 224 N.W.2d 609, 616 (Iowa 1974), *overruled on other grounds by State v. Seager*, 341 N.W.2d 420 (Iowa 1983). Baker did not make such a showing, however, his codefendant raised the issue of the affidavit's validity, and the district court ruled on the issue when denying the motions to suppress.[3] Because the State did not object to the issue of the affidavit's validity in the district court, we will consider the merits of Baker's veracity claim on appeal. *See State v. Groff*, 323 N.W.2d 204, 209 (Iowa 1982).

Baker alleges Isley omitted material facts from the warrant application in three instances. First, Isley stated in his affidavit that Baker was arrested for narcotics trafficking in Nevada but did not state that Baker was not convicted of a crime. Second, Isley stated that Baker evaded Girsch when he saw Girsch conducting surveillance, but did not state Girsch was undercover in plain clothing and an unmarked vehicle at that time. Third, Isley failed to include information to demonstrate the reliability of the anonymous informant.

Baker bears the burden of proving that officers made materially false statements in the affidavit either deliberately or with a reckless disregard for the truth. *See State v. Green*, 540 N.W.2d 649, 656 (Iowa 1995); *Groff*, 323 N.W.2d at 207–08. In *Green*, we held officers did not misrepresent

---

[3]The Supreme Court has endorsed a similar procedure, saying,

> [W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request.

*Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S. Ct. 2674, 2676 (1978).

facts in a warrant application that was granted to search the home of the defendant. 540 N.W.2d at 657–58. There, the defendant had beaten his girlfriend to death in their home, and he told family and friends she had left with another man. *Id.* at 653. After seven months of no contact from the deceased woman, her family became suspicious and asked police to investigate. *Id.* When officers went to the defendant's home to inquire about his girlfriend, officers noticed the woman's car was still in the garage. *Id.* The defendant told officers he bought the car and his girlfriend did not take it when she left. *Id.* Officers obtained and executed a search warrant of the defendant's residence and found the body of defendant's girlfriend. *Id.*

The defendant there argued officers misrepresented the facts in the warrant application by not including his statement that he bought his girlfriend's car, his explanation for why her car was in their garage. *Id.* at 657. We found this unpersuasive, saying, "[A]n officer applying for a search warrant 'is not required to present all inculpatory and exculpatory evidence to the magistrate,' only that evidence which would support a finding of probable cause." *Id.* (quoting *State v. Johnson*, 312 N.W.2d 144, 146 (Iowa Ct. App. 1981)). We reasoned that omissions of fact are misrepresentations only if the omitted facts "cast doubt on the existence of probable cause," and the recitation of the defendant's explanation would not have cast reasonable doubt on the existence of probable cause. *Id.* (quoting *State v. Ripperger*, 514 N.W.2d 740, 745 (Iowa Ct. App. 1994)).

In *Gogg*, we held an officer's affidavit did not misrepresent facts in a warrant application that was granted to search the home of the defendant, who was subsequently charged with possession of methamphetamine and conspiracy to manufacture or deliver methamphetamine. 561 N.W.2d at 364–65. The court granted the warrant based on only information from a

confidential informant, and the defendant argued probable cause was lacking because the confidential informant was not reliable. *Id.* at 363.

Specifically, the defendant argued the officer's affidavit had misrepresented how reliable the informant was by stating the informant had given "reliable information on several occasions in the past." *Id.* at 364. While at the suppression hearing, the officer testified that the informant had provided reliable information on two prior occasions. *Id.* We held the information in the affidavit was not a misrepresentation, saying, "The fact that the information had been verified on only two occasions does not mean the informant's information on the other six occasions was not reliable." *Id.* at 364–65.

In *State v. Paterno,* the defendant challenged his conviction of possession of a controlled substance with intent to deliver, arguing the officer who obtained the warrant made a material misrepresentation. 309 N.W.2d 420, 423 (Iowa 1981). There, an informant smoked marijuana and hash with the defendant at the defendant's home. *Id.* at 421–22. The defendant became suspicious of the informant and told her he was going to flush all of the marijuana he possessed down the toilet, which he did while she was still in his house. *Id.* at 422.

In the warrant application, the officer included information from the informant that the defendant possessed marijuana and offered it to the informant. *Id.* at 422–23. The defendant argued the officer's omission of the information that the defendant was aware of the investigation and had destroyed the remaining marijuana was a misrepresentation in the warrant application. *Id.* at 423. After reviewing the officer's testimony explaining that he did not consciously withhold those facts, we found the defendant did not establish an intentional or material misrepresentation

in the warrant application. *Id.* at 424–25. The officer testified that when applying for a warrant,

> I look for facts that would give myself a feeling that we had probable cause to enter a residence; facts that are truthful; that the magistrate can look at and absorb; and facts that will suffice a search warrant. It has to be a good lot of facts as far as I'm concerned for a type of search warrant.

*Id.* at 425. We reiterated in *Paterno* that failure to disclose information in a warrant application can constitute a misrepresentation if the failure to disclose results in a misconception or, in other words, if the omission produces the same practical effect as an affirmative statement. *Id.* at 424.

With these principles and examples in mind, we turn to the three contentions brought by Baker.

1. *Officer Isley's failure to state Baker was not convicted of a crime in Nevada.* In his affidavit, Officer Isley stated,

> On August 30, 2015 Inv. Girsch of the Tri-County Drug Enforcement Task Force was contacted by Nevada State Patrol Trooper Tumanuvao reference a traffic stop conducted near West Wendover, Nevada. Trooper Tuman[u]vao stopped a vehicle containing Justin BAKER, [and two other males], all of Waterloo, IA. Nevada State Troopers eventually located multiple pounds of marijuana and edibles concealed in a speaker/subwoofer box in the trunk of the vehicle. BAKER and the other two occupants of the vehicle were placed under arrest for felony narcotics trafficking charges. During the course of the investigation it was determined BAKER and the others were coming from California and headed back to Waterloo, IA.

Baker argues Isley's failure to state that Baker was not convicted of a crime in Nevada was a misrepresentation, and unlike a conviction, an arrest cannot support probable cause.

As we reasoned in *Green,* an officer is not required to present all inculpatory or exculpatory evidence to the issuing judge. 540 N.W.2d at 657. To the contrary, an officer is only required to present the information

that supports a finding of probable cause. *Id.* If known to the issuing judge, the fact that Baker was not convicted would not cast doubt on the separate fact that he was arrested for having multiple pounds of marijuana in a vehicle driving across Nevada. *See id.* While information of an arrest alone would not rise to the level of probable cause, it can, like a defendant's history or reputation, be considered as a supporting fact in a warrant application when it tends to show a nexus between the defendant and illegal narcotics activity. *See Jones v. United States*, 362 U.S. 257, 271, 80 S. Ct. 725, 736 (1960) ("[T]hat petitioner was a known user of narcotics made the charge against him much less subject to s[k]epticism than would be such a charge against one without such a history."), *overruled on other grounds by United States v. Salvucci*, 448 U.S. 83, 85, 100 S. Ct. 2547, 2549 (1980); *State v. Padavich*, 536 N.W.2d 743, 750 (Iowa 1995) ("The affidavit shows facts which, if true, suggest . . . Padavich has a history of, and reputation for, drug involvement."); *State v. Cassady*, 243 N.W.2d 581, 582 (Iowa 1976) (finding issuance of search warrant not assailable on ground of staleness where affidavit showed facts suggesting defendant's continuing involvement in narcotics).

While Baker is correct that an arrest is merely an allegation, and we do not hold that it stands for anything more, "affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial" and "in judging probable cause[,] issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense." *State v. Jensen*, 189 N.W.2d 919, 925 (Iowa 1971) (quoting *Spinelli v. United States*, 393 U.S. 410, 419, 89 S. Ct. 584, 590 (1969), *abrogated on other grounds by Gates*, 462 U.S. at 238, 103 S. Ct. at 2332). Here, the significant information from the Nevada police was not that Baker had been arrested but that he

had been heading from California back to Waterloo in a vehicle that had distribution-quantities of marijuana in it. Therefore, we find Isley's omission from the warrant application that Baker was not convicted of a crime connected to his arrest in Nevada was not a material misrepresentation.

2. *Officer Isley's failure to state Girsch was undercover when Baker allegedly evaded Girsch.* Isley's affidavit stated,

> During the week of April 3rd-9th, 2016 Inv. Girsch was conducting a separate investigation in the area of Ricker Street and observed a vehicle, a blue Buick bearing IA plate EEF303, occupied by Justin BAKER. BAKER looked over at Inv. Girsch as if concerned of his presence and slowly passed by 702 Ricker Street. Inv. Girsch believed BAKER was intended on going to 702 Ricker Street but passed by after seeing Inv. Girsch in the area. Inv. Girsch then drove around the block and watched 702 Ricker Street from a concealed position. Approximately thirty seconds later the blue Buick pulled into the driveway of 702 Ricker Street and Inv. Girsch observed BAKER exit the vehicle and go into 702 Ricker Street, appearing to use a key to access the residence.

At the hearing for the motion to suppress evidence, Girsch testified,

> I believe I stuck out in that neighborhood, my vehicle, all kinds of things. I mean, let me put it this way. People in town, they know what cars we drive because we have the same cars forever. They know our faces because we used to work the streets with them, you know, we dealt with them on the streets. All those things add up to, I mean . . . it doesn't take a rocket scientist to figure out who a cop is in certain neighborhoods.

Girsch further testified that "[he] strongly believe[d he] was identified [by Baker]" based on Baker's "suspicious behavior" of slowing down, seeing Girsch, leaving the area, and then returning when Girsch appeared to have left. Based on Girsch's experience as an officer and as a narcotics investigator, he believed Baker recognized and avoided him. Again, even if the warrant application stated Girsch was in plain clothing and driving an undercover vehicle when this occurred, it would not cast doubt on

probable cause. *See Green*, 540 N.W.2d at 657. Therefore, we find Isley's omission from the warrant application that Girsch was undercover when Baker avoided him was not a misrepresentation.

3. *Officer Isley's failure to state information demonstrating the reliability of the anonymous informant.* Baker argues the warrant application contained no evidence that the anonymous tip was reliable. In *Gates*, the Supreme Court discussed when an anonymous tip provides sufficient indicia of reliability to give rise to probable cause. 462 U.S. at 230–41, 103 S. Ct. at 2328–34. In *Gates*, officers received an anonymous letter informing them that a man and woman operated a narcotics scheme:

> This letter is to inform you that you have a couple in your town who strictly make their living on selling drugs. They are Sue and Lance Gates, they live on Greenway, off Bloomingdale Rd. in the condominiums. Most of their buys are done in Florida. Sue his wife drives their car to Florida, where she leaves it to be loaded up with drugs, then Lance flys down and drives it back. Sue flys back after she drops the car off in Florida. May 3 she is driving down there again and Lance will be flying down in a few days to drive it back. At the time Lance drives the car back he has the trunk loaded with over $100,000.00 in drugs. Presently they have over $100,000.00 worth of drugs in their basement.
>
> They brag about the fact they never have to work, and make their entire living on pushers.
>
> I guarantee if you watch them carefully you will make a big catch. They are friends with some big drugs dealers, who visit their house often.

*Id.* at 225, 103 S. Ct. at 2325. Officers investigated the tip and discovered Lance Gates had made an airline reservation flying from Chicago to Florida. *Id.* at 226, 103 S. Ct. at 2325–26. Officers surveilled the flight and Lance's subsequent movements once he arrived in Florida. *Id.* at 226, 103 S. Ct. at 2326. They discovered Lance went to a room registered to Susan Gates, and the following day Lance and an unidentified woman drove northbound in the Gateses' vehicle. *Id.* Based on that information,

which corroborated the anonymous tip, officers submitted an affidavit for a warrant together with the anonymous letter. *Id.* The judge granted a search warrant for the Gateses' house and automobile. *Id.* Upon executing the warrant, officers found over 350 pounds of marijuana, weapons, and other contraband. *Id.* at 227, 103 S. Ct. at 2326.

The Supreme Court said that while the letter alone would not provide a basis for probable cause to believe contraband would be found in the Gateses' car and home, applying a totality-of-the-circumstances analysis, the letter accompanied by the independent police work did provide such a basis. *Id.* at 243–44, 103 S. Ct. at 2335. The Court reasoned that the police investigation without the anonymous tip suggested that the Gateses were involved in drug trafficking. *Id.* at 243, 103 S. Ct. at 2335. Further, the Court relied on the fact that officers corroborated information in the anonymous letter with an independent investigation. *Id.* at 244, 103 S. Ct. at 2335. Lastly, the Court said it found the letter supported probable cause because it contained a range of details relating to facts and future actions not easily predicted. *Id.* at 245–46, 103 S. Ct. at 2335. Therefore, the Court held the judge issuing the warrant had a substantial basis for concluding that probable cause to search the Gateses' home and car existed. *Id.*

In the present case, the anonymous tip did not give as much detailed information as the tip officers received in *Gates*. *See id.* at 225, 103 S. Ct. at 2325. According to Isley, the tipster said only that

> they had been over at 702 Ricker where they stated that Justin [Baker] and Shana [Caldwell] were living. In the past couple days they had been over there and saw that there was a distribution amount of marijuana inside the house, and they had called, and while speaking with them they said that they had just supposedly got back into town with a shipment of more marijuana.

This tip shows far less inside knowledge when compared to the tip in *Gates*. *See id.*

However, like *Gates*, officers here also conducted an independent investigation that corroborated the tipster's information that Baker and Caldwell were dealing drugs from their home. *See id.* at 243–45, 103 S. Ct. at 2335. Girsch received information that Baker was arrested in Nevada with a distributional amount of marijuana. He later noticed Baker act suspiciously when Baker saw him on-duty near 702 Ricker Street. Then, within twenty-four hours of receiving the anonymous tip, Girsch and Isley witnessed Baker leave his house, meet people in an alley, and engage in what officers believed to be a hand-to-hand narcotics deal. Finally, when conducting a traffic stop based on the hand-to-hand drug deal, officers recovered a baggie of marijuana Baker threw from his car as he stopped. Based on the totality of the circumstances, we conclude the judge did not err in relying on the tip when determining whether there was sufficient probable cause to support the search warrant.

**E. Challenge to Probable Cause with Extracted Inadmissible Factors.** Baker asserts that without the marijuana and misinformation, the warrant application is based solely on the hand-to-hand drug transaction, which is not sufficient to establish probable cause. As previously discussed, we find neither the marijuana recovered from the traffic stop nor the information provided by Isley in the warrant application must be extracted. Therefore, considering all of the information that the district court considered, we assess whether the issuing judge had a substantial basis for concluding probable cause existed. *McNeal*, 867 N.W.2d at 100.

The test we apply is "whether a person of reasonable prudence would believe a crime was committed on the premises to be searched or evidence

of a crime could be located there." *Gogg*, 561 N.W.2d at 363 (quoting *Weir*, 414 N.W.2d at 330). Examining the totality of the circumstances, we find the judge had a substantial basis for issuing the warrant. Officers received information from two sources—an out-of-state law enforcement officer and an anonymous informant—that Baker was involved in narcotics trafficking. Officers watched Baker and found he acted suspiciously when near the house where he kept the marijuana. While surveilling Baker, officers witnessed what they believed to be a hand-to-hand drug transaction. Then when initiating a traffic stop to investigate the drug transaction, Baker threw a bag of marijuana out of the window of his vehicle. Officers also recovered $200 in twenty-dollar bills from Baker's person, and while this would certainly not be indicative of narcotics dealing, it is consistent with it.

Based on these facts, when viewed under a totality of the circumstances, it is not unreasonable that the issuing judge found probable cause to search 702 Ricker Street based on narcotics distribution.

**V. Whether Baker's Guilty Pleas Were Involuntary.**

While Baker argues his guilty pleas were involuntary, his argument is under the framework of ineffective assistance because he did not preserve error. His argument is that counsel was ineffective for failing to file a motion to suppress evidence from the April 18 traffic stop, which gave rise to one of the charges of driving while license barred and to the possession of marijuana charge. The argument continues that if counsel had filed a motion to suppress for those charges, the trial court would have granted the motion, resulting in no evidence to prove Baker was either driving without a license or in possession of marijuana on the day of the traffic stop.

As we found above, the district court did not err in determining the officer had a reasonable suspicion to conduct the traffic stop. Therefore, counsel's failure to file a motion to suppress did not prejudice Baker. *See State v. Straw*, 709 N.W.2d 128, 133 (Iowa 2006) ("To establish [a] claim of ineffective assistance of counsel, [a defendant] must demonstrate (1) his trial counsel failed to perform an essential duty, and (2) this failure resulted in prejudice." (citing *Strickland v. Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 2064–65 (1984))).

## VI. Disposition.

We find the stop of Baker's vehicle was supported by reasonable suspicion and the warrant to search 702 Ricker Street was supported by probable cause. We further find Baker's counsel was not ineffective. Finally, we let the court of appeals decision stand as the final decision of this court as to whether the district court abused its discretion when it sentenced Baker. Therefore, we affirm the decision of the court of appeals and the judgment of the district court.

**DECISION OF COURT OF APPEALS AND JUDGMENT OF DISTRICT COURT AFFIRMED.**

All justices concur except McDonald, J., who takes no part.