**IN THE COURT OF APPEALS OF IOWA**

No. 19-0487
Filed July 22, 2020

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**DAVID LOREN BOLL,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Buchanan County, Stephanie C. Rattenborg, District Associate Judge.

A defendant appeals his conviction for operating while intoxicated, second offense. **AFFIRMED.**

David L. Boll, Lamont, self-represented appellant.

Thomas J. Miller, Attorney General, and Katie Krickbaum, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., May, J., and Blane, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**TABOR, Presiding Judge.**

David Boll appeals the denial of his motion to suppress evidence underlying his conviction for operating while intoxicated (OWI), second offense. Because the evidence stemmed from a constitutional traffic stop, we affirm the district court's suppression ruling. We also decline to grant relief on Boll's discovery claims.

## I. Facts and Prior Proceedings

Eleven-year-old C.B. called 911 to report an argument between his mother and father. The boy told the dispatcher, "[I]t's getting very violent." The dispatcher then spoke with the caller's mother, K.K., who acknowledged there had been some pushing between her son and his father. At 8:57 p.m., two Buchanan County deputies—Ben Ward and Joseph Schwinghammer—were dispatched in separate vehicles to C.B.'s address in Stanley on the son's report of a domestic disturbance. Before either deputy arrived, dispatch relayed the information that the father, David Boll, had left the residence in his car. And based on the son's report, Boll had been drinking. The mother told the dispatcher it was unnecessary to send officers. But law enforcement protocol required them to confirm whether the possible victim of domestic abuse was coerced to cancel the call for help.

Knowing Boll had left the residence, Deputy Ward went to the Stanley address while Sergeant Schwinghammer went in search of Boll. Schwinghammer had previous interactions with Boll and recognized his car when he spotted it on the road at 9:15 p.m.[1] After the sergeant turned on his lights, Boll continued driving for a short distance. When Boll did pull over, Sergeant Schwinghammer noted he

---

[1] Sergeant Schwinghammer went to Boll's residence the day before to serve him court papers.

had glassy, bloodshot eyes, slurred speech, and the odor of alcohol on his breath.

Meanwhile, Officer Ward arrived at the residence in Stanley and determined the disturbance reported by C.B. did not require filing charges. Ward communicated that assessment to Sergeant Schwinghammer in a phone call.

At the roadside, Schwinghammer tried to administer field sobriety tests. But Boll did not follow instructions for the horizontal gaze nystagmus (HGN) and refused to engage in the other tests. Schwinghammer then took Boll to the police station. At the station, the sergeant explained the Miranda rights to Boll. When asked if he understood his rights, Boll replied that he could not answer that question. When Schwinghammer asked Boll if he was waiving his rights, Boll told the deputy he was "pleading the fifth." Schwinghammer then read Boll the implied-consent advisory. Boll refused to sign the form requesting a breath test. Boll also refused to give a breath sample.

The State charged Boll with OWI second offense, an aggravated misdemeanor in violation of Iowa Code section 321J.2 (2018). Boll represented himself throughout the trial court proceedings and now on appeal.

Boll moved to suppress the evidence collected by Schwinghammer. The district court denied that motion. Boll then pleaded guilty to OWI. After having a change of heart, Boll moved in arrest of judgment and sought to withdraw his guilty plea. The court granted Boll's motion in arrest of judgment. He then stipulated to a trial on the minutes of evidence to preserve his right to challenge the suppression issues on appeal. The court found him guilty and imposed a sentence of one year incarceration with all but sixty days suspended. Boll appeals.

**II. Scope and Standards of Review**

We review challenges to suppression rulings de novo when they implicate constitutional issues. *State v. Baker*, 925 N.W.2d 602, 609 (Iowa 2019). That review entails an independent review of the totality of circumstances on the entire record. *Id.* We defer to the district court's factual findings, but they do not dictate our result. *State v. Louwrens*, 792 N.W.2d 649, 651 (Iowa 2010).

We also review discovery rulings challenged on constitutional grounds de novo. *State v. Leedom*, 938 N.W.2d 177, 185 (Iowa 2020). But we review nonconstitutional challenges to discovery rulings for an abuse of discretion. *Id.*

**III. Analysis**

**A. Motion to Suppress**

**1. Basis for Investigatory Stop**

Boll argues that Officer Schwinghammer did not have reasonable suspicion to justify pulling him over on the night of the 911 call. Boll also contends the community caretaker exception did not apply.[2] He urges any evidence of his drunkenness stemming from that traffic stop should have been suppressed under

---

[2] The county attorney argued the community caretaker exception justified the traffic stop. The district court overruled the motion to suppress by finding reasonable suspicion for the stop. Boll contends on appeal that the State waived the reasonable-suspicion argument by not raising it at the suppression hearing. *See DeVoss v. State*, 648 N.W.2d 56, 62–63 (Iowa 2002). But *DeVoss* makes an exception for evidentiary rulings. *Id.* at 62. A motion to suppress challenges the admissibility of evidence seized from a defendant; thus, we may affirm the suppression ruling on any ground appearing in the record, whether urged by the parties. *See State v. Rave,* No. 09-0415, 2009 WL 3381520, at *2–3 (Iowa Ct. App. Oct. 21, 2009); *see also State v. Gaskins*, 866 N.W.2d 1, 44 (Iowa 2015) (Waterman, J., dissenting).

the Fourth Amendment of the U.S. Constitution and Article I, section 8 of the Iowa Constitution.[3]

Both provisions protect people from unreasonable searches and seizures. U.S. Const. Amend. IV; Iowa Const. art. I, § 8. A search or seizure without a warrant is per se unreasonable, unless the State can prove by a preponderance of the evidence that a recognized exception to the warrant requirement applies. *State v. Lewis*, 675 N.W.2d 516, 522 (Iowa 2004). Reasonable suspicion is a recognized exception. *State v. McIver*, 858 N.W.2d 699, 702 (Iowa 2015). A traffic stop is a seizure. *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013). But if the deputy had reasonable suspicion to believe criminal activity had occurred or was occurring, he could stop and briefly detain Boll for investigatory purposes. *See State v. Tague*, 676 N.W.2d 197, 204 (Iowa 2004) (citing *Terry v. Ohio*, 392 U.S. 1, 21 (1968)). Reasonable suspicion must be "based on specific and articulable facts, which taken together with rational inferences from those facts" cause the officer to "reasonably believe criminal activity may have occurred." *Id.*

Sergeant Schwinghammer was responding to a 911 call reporting what sounded like domestic abuse assault, a crime under Iowa Code section 708.2A. Boll contends K.K. dispelled any reasonable suspicion when she told dispatch they did not need to send officers. But the State's witnesses testified it was standard procedure to investigate domestic-abuse reports even if the caller withdraws their

---

[3] Boll does not argue the reasonable-suspicion analysis would be different under the state constitution than it would be under the federal constitution. Lacking that argument, we "exercise prudence by applying the federal framework to our analysis of the state constitutional claim." *State v. Baker*, 925 N.W.2d 602, 610 (Iowa 2019). Following our state supreme court, "we may diverge from federal case law in our application of that framework under the state constitution." *Id.*

request for help.[4]  Likewise, the fact Boll had left the residence did not erase the reasonable suspicion.  Under these circumstances, the deputy could reasonably believe the situation reported to dispatch by the child caller required further investigation to resolve any ambiguity whether Boll had engaged in criminal activity and whether he still posed a danger to family members.  "The purpose of an investigatory stop is to allow a police officer to confirm or dispel suspicions of criminal activity through reasonable questioning."  *State v. Baker*, 925 N.W.2d 602, 610 (Iowa 2019) (quoting *State v. Kreps*, 650 N.W.2d 636, 641 (Iowa 2002)).  Like the district court, we find the investigatory stop was constitutional.[5]

### 2.      Basis for OWI Investigation

Boll next argues Sergeant Schwinghammer lacked enough evidence to believe he was driving while impaired.  The district court determined, "Once Schwinghammer interacted with Boll, he also obtained reasonable suspicion that Boll was operating his vehicle while intoxicated."  We agree with that

---

[4] This policy makes sense.  Domestic violence victims often recant their accusations under threat or out of fear that their abuser will become more aggressive.  *See State v. Smith*, 876 N.W.2d 180, 187–88 (Iowa 2016) (observing that "complex dynamics" can lead many victims to refrain from reporting abuse or to recant initial reports).

[5] The State also argues Sergeant Schwinghammer had reasonable suspicion to believe Boll was operating while intoxicated.  In a deposition, the sergeant testified that he knew the son reported his father had been drinking.  The sergeant also testified the video showed Boll "hit the center line" before the investigatory stop, though the sergeant did not cite that "erratic driving" as a basis for pulling over Boll.  A named citizen's tip concerning a drunk driver, if reliable, may provide reasonable suspicion for an investigatory stop.  *See State v. Campbell*, No. 13-0558, 2014 WL 1494906, at *1–2 (Iowa Ct. App. Apr. 16, 2014) (distinguishing anonymous tip in *State v. Kooima*, 833 N.W.2d 202, 205 (Iowa 2013)).  But unlike the caller in *Campbell*, C.B. did not see erratic driving.  In any regard, given the report of possible domestic violence, we need not rely on this alternative basis.

determination. During his investigation, the sergeant developed reasonable grounds to invoke implied consent under Iowa Code section 321J.6.[6]

First, C.B. reported to dispatch that his father had been drinking. Second, after the stop, Sergeant Schwinghammer observed signs that Boll was intoxicated.[7] Those signs included slurred speech, unsteadiness, the odor of alcohol, and bloodshot eyes. Boll also admitted having "a couple" drinks. And as the district court noted: "Boll also had a wet spot on the front of his pants, leading Schwinghammer to suspect Boll had urinated himself." From there, Boll was unable or unwilling to follow instructions for the field sobriety tests.[8] Schwinghammer had cause to take Boll to the police station to continue the investigation and eventually invoke implied consent. *See Crosser v. Iowa Dep't of Pub. Safety*, 240 N.W.2d 682, 685 (Iowa 1976) (defining "reasonable grounds" as facts known to the officer warranting a prudent person to believe the offense had been committed). Sergeant Schwinghammer's observations of Boll's condition during the investigatory stop and Boll's refusal to submit to implied-consent testing were admissible evidence.

---

[6] Iowa law provides:
> A person who operates a vehicle in [Iowa] under circumstances which give reasonable grounds to believe that person has been operating a motor vehicle [while intoxicated] is deemed to have given consent to the withdrawal of specimens of the person's blood, breath, or urine . . . for the purpose of determining the alcohol concentration.

Iowa Code § 321J.6(1).

[7] Under examination by Boll referring to video from the squad-car camera, Sergeant Schwinghammer testified he saw "erratic driving" before pulling him over: "you hit the center line twice." But the sergeant did not rely on that conduct as the basis for the stop.

[8] Boll expresses concern that the State relied on an incomplete HGN test. Like the district court, we give no weight to that test in finding the deputy had reasonable grounds to invoke implied consent.

**B.      Discovery and Alleged *Brady* Violation**

As a final claim, Boll contends the district court abused its discretion in handling his discovery requests.  He also alleges a due process violation under *Brady v. Maryland*, 373 U.S. 83, 86–87 (1963).

About a week after the State filed its trial information, Boll moved for discovery.  He requested all communication between the 911 dispatcher and the deputies.  The court granted the request in late April 2018.  After Boll made several more requests, the court again, in August 2018, ordered the State to provide him with "an audio recording, if it exists, of any radio dispatch and officer communications related to this matter."  Boll received that recording (later designated as Exhibit E) sometime before the end of September 2018, because he asked the district court to consider it part of the suppression record.  In an October 2018 ruling, the court confirmed that it considered that exhibit in reaching its ruling.

On appeal, Boll argues a *Brady* violation occurred because the court "failed to order all discovery timely."  To show the infringement on due process, Boll "must prove by a preponderance of the evidence (1) the prosecution suppressed evidence; (2) the evidence was favorable to him; and (3) the evidence was material to the issue of his guilt."  *See Moon v. State*, 911 N.W.2d 137, 145 (Iowa 2018) (internal quotation marks and citation omitted).

Boll fails to meet these elements.  The State did not suppress the radio communications.  The record suggests it took several months for Boll to receive the evidence he sought.  But the State complied with the request in time for him to submit the recording with his suppression arguments.  More importantly, the

recording was not exculpatory. The radio communication revealed that C.B. thought that his father had a "drinking problem" and was acting violent. And most critically, the radio communication was immaterial to the issue of Boll's guilt on the OWI charge.

We find no constitutional violation or abuse of discretion in addressing Boll's discovery request.

**AFFIRMED.**