# IN THE COURT OF APPEALS OF IOWA

No. 19-1591
Filed October 21, 2020

**STATE OF IOWA,**
Plaintiff-Appellee,

**vs.**

**BIZIMANA SONAS CIZA,**
Defendant-Appellant.

_____

Appeal from the Iowa District Court for Polk County, William A. Price, District Associate Judge.

Bizimana Ciza appeals his conviction for operating while intoxicated, third offense. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Darrel Mullins, Assistant Attorney General, for appellee.

Considered by Vaitheswaran, P.J., and Tabor and Schumacher, JJ.

**VAITHESWARAN, Presiding Judge.**

An employee of a Des Moines liquor store called 911 to report concerns about a man who had been sitting in his parked vehicle for about twenty minutes. A police officer was dispatched to the parking lot. The officer pulled in behind the vehicle and eventually arrested the driver, Bizimana Ciza.

The State charged Ciza with (1) operating a motor vehicle while intoxicated, third offense, (2) driving with a denied or revoked license, and (3) driving while barred as a habitual offender. Ciza moved to suppress evidence gained during the interaction. The district court denied the motion and found Ciza guilty of the first two crimes.[1] Ciza appealed the suppression ruling following imposition of sentence.

The Fourth Amendment to the United States Constitution and article 1, section 8 of the Iowa Constitution protect people from unreasonable searches and seizures. U.S. Const. Amend. IV; Iowa Const. art. I, § 8. A search or seizure without a warrant is per se unreasonable, unless the State can prove by a preponderance of the evidence that a recognized exception to the warrant requirement applies. *State v. Simmons*, 714 N.W.2d 264, 271–72 (Iowa 2006). Our review of a suppression ruling under these constitutional provisions is de novo. *State v. Baker*, 925 N.W.2d 602, 609 (Iowa 2019).

In ruling on Ciza's motion to suppress, the district court preliminarily found "there was a seizure" when the officer "pull[ed] up directly behind [Ciza's] vehicle in the . . . parking lot." The State agrees "[a] seizure occurred here," but barely

---

[1] The court granted the State's motion to dismiss the charge of driving while barred as a habitual offender.

so." While acknowledging the officer's stop of Ciza's vehicle "may suffice as a constitutionally significant event," the State cites several factors detracting from the finding. In light of the State's equivocal concession, we will briefly address the seizure issue.

A seizure requires "objective indices of police coercion." *State v. Fogg*, 936 N.W.2d 664, 669 (Iowa 2019) (citation omitted). The officer's dash camera showed him pulling in behind Ciza's vehicle. The officer did not activate his emergency lights because, in his words, they "were in a parking lot" and he did not believe "there was a traffic issue." However, he entirely blocked Ciza's egress from the parking spot. That act rendered the contact a seizure. *See State v. Kurth*, 813 N.W.2d 270, 277 (Iowa 2012) (finding a seizure where the officer "pulled in behind" the defendant, "blocked him in, and activated his emergency lights"); *cf. Fogg*, 936 N.W.2d at 669–70 (concluding there was no seizure where the officer "parked at least twenty feet away from [the defendant's] parked vehicle" and did not activate his emergency lights and the defendant was "not 'boxed in'" (citation omitted)).

The district court next found the warrantless seizure fell under the community caretaking exception to the warrant requirement. Ciza takes issue with the district court's application of the exception.

The community caretaking exception is "totally divorced from the detection, investigation, or acquisition of evidence relating to the violation of a criminal statute." *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018) (quoting *Cady v. Dumbrowski*, 413 U.S. 433, 441 (1973)). "This exception 'involves the duty of police officers to help citizens an officer reasonably believes may be in need of assistance.'" *Id.* (quoting *State v. Tyler*, 867 N.W.2d 136, 170 (Iowa 2015)).

"Under article I, section 8 [of the Iowa Constitution], . . . it is incumbent on the state to prove *both* that the objective facts satisfy the standards for community caretaking *and* that the officer subjectively intended to engage in community caretaking." *Id.* at 257 (emphasis in original).[2] In applying the caretaking exception, courts ask the following questions: "(1) was there a seizure within the meaning of the Fourth Amendment?; (2) if so, was the police conduct bona fide community caretaker activity?; and (3) if so, did the public need and interest outweigh the intrusion upon the privacy of the citizen?" *Id.* at 245.

Having concluded there was a seizure, we proceed to the next question— whether the officer's actions amounted to a bona fide community caretaking activity. Ciza asserts (a) "[t]he information" claimed to have been received by the officer "from the police dispatcher was wrong"; (b) "[t]his was an [operating-while-intoxicated (OWI)] investigation from the beginning"; and (c) "[t]here were no facts known to police necessitating emergency aid action, nor did the facts disclose a dangerous situation justifying a stop and seizure."

The dispatcher received the following 911 call:

> DISPATCH: Police Department.
> EMPLOYEE: Um, yes. I'm calling from Central City Liquor. I've had this car out in front of our lot for like twenty minutes. I thought the man—he's just sitting in his car asleep—I don't know if he's asleep or what, but his car's running. And I don't know what's going on with this man. I don't know if he needs medical help, I don't know, but he's just been sitting.

---

[2] If a defendant relying on the state constitution does not "advance a distinct analytical framework under the Iowa Constitution," we will "apply the federal framework applied to claims under the Fourth Amendment to the United States Constitution in considering his state constitutional claim." *See Baker*, 925 N.W.2d at 610. Ciza relies on the Iowa constitutional framework articulated in *Coffman*, 914 N.W.2d at 257, which adopted the federal framework, with "one qualification"—the addition of subjective intent.

> DISPATCH: What type of car?
> EMPLOYEE: Um . . . . It's a Nissan truck.
> DISPATCH: And how long has the male been inside?
> EMPLOYEE: He's not in the truck. Um, I noticed this car maybe twenty minutes ago. I thought it was maybe one of my customers earlier, but then I went outside to take trash and it's this car and it's running. And he's just—I don't know if he's asleep—I don't know what's wrong with this man. And we're getting ready to close up the store, and I just didn't want him to sit out here in a car like this in front of the liquor store, ma'am.
> DISPATCH. OK. And your phone number?
> EMPLOYEE: [provides phone number]
> DISPATCH: Alright, I'll get 'em out there.

Ciza asserts that the officer who responded to the 911 call characterized the nature of the call differently, referring to the person in the car as "either passed out or down in the vehicle" rather than "just sitting in his car asleep." In his view, the officer's characterization—adopted by the district court—was a "misstatement of fact." We disagree. At the suppression hearing, the officer conceded the information he received from the dispatcher was "general" and the vehicle occupant could have been just sleeping. On our de novo review, we are persuaded that the officer was dispatched to assess the welfare of the occupant, whether the occupant was described as "down," "passed out," or "sleeping."

Turning to Ciza's assertion that this was an OWI investigation from the beginning, the officer conceded the location of the vehicle raised a suspicion of intoxication. But the officer also stated he could not rule out the possibility that Ciza required medical assistance. Ciza's condition as disclosed in the 911 call was at best ambiguous, justifying the officer's decision to follow up.

This brings us to Ciza's assertion that there were no facts indicating "emergency action" was required or evincing a "dangerous situation." The

argument requires us to evaluate the various doctrines encompassed within the community caretaking exception.

"The community caretaking exception has three branches: '(1) the emergency aid doctrine, (2) the automobile impoundment/inventory doctrine, and (3) the "public servant"' exception.'" *Id.* at 244 (citation omitted). Ciza focuses on the "emergency aid" doctrine, asserting, "The facts in this case exclude the possibility of the second alternative" and the "public servant caretaker" branch "is not applicable in this case."[3] The State responds that "the public servant [doctrine] is the most pertinent."

We agree with Ciza that the automobile impoundment/inventory doctrine does not apply. As for the remaining two branches, "[t]he emergency-aid and public-servant doctrines are closely related." *Id.* "Under the emergency aid doctrine the officer has an immediate, reasonable belief that a serious, dangerous event is occurring." *Id.* (citation omitted). Under the public servant doctrine, the officer "might or might not believe that there is a difficulty requiring . . . general assistance." *Id.* at 245 (citation omitted).

The facts disclosed by the 911 caller implicate the public servant doctrine. The officer was dispatched to check on the welfare of the vehicle occupant and provide aid if needed. *See* Mary Elisabeth Naumann, *The Community Caretaker Doctrine: Yet Another Fourth Amendment Exception*, 26 Am. J. Crim. L. 325, 339 (1999) ("[T]he [public servant] doctrine supports relatively minor or regular interactions with the police: approaching parked cars when the driver appears

---

[3] Ciza argues, "The contrast between the emergency aid and public servant caretaker exceptions clearly show that the latter is not applicable in this case."

incapacitated or sick or the car is functioning improperly."). When he arrived, he saw that the vehicle "was running" and "the brake lights were on indicating someone was pressing the brake." The officer testified that his concerns on arrival were "for the driver's safety and for the safety of the public as well as [his] own safety if the vehicle was in gear." He explained that it was a "common practice" to "box the vehicle in" because, if the driver was passed out and his or her foot came off the brake, the vehicle might move "forward or [into] reverse."

In this case, the dash camera video showed Ciza's head moving, indicating he was not passed out. While the officer used the blocking maneuver nonetheless, he did not activate his emergency lights. As he approached the vehicle, Ciza turned off the ignition and got out of the car.

We conclude the officer's conduct objectively reflected community caretaking activity, as did his subjective intent. *See Coffman*, 914 N.W.2d at 242, 253–54 (affirming application of the community caretaking exception where an officer saw a vehicle pulled over on the side of a highway late at night with its brake lights on, the officer activated his emergency lights to alert traffic, the officer pulled in behind the vehicle, and the officer testified it was his practice to make this type of stop to check on the welfare of the occupants); *State v. Brunk*, No. 05-1468, 2006 WL 2706145, at *1–3 (Iowa Ct. App. Sept. 21, 2006) (affirming application of the community caretaking exception where police received an anonymous 911 call that its driver was "either asleep or passed out" in a parking lot and the officer then observed the vehicle leaving the parking lot and stating "it was reasonable for [the officer] to briefly stop the vehicle to ascertain whether the driver needed assistance or was safe to continue on the public roadway"). *But see State v. Smith*, 919

N.W.2d 1, 2, 4 (Iowa 2018) (rejecting application of community caretaking exception where a van drove by the site of an investigation, officers pulled over the van but the driver "appeared not to want [the deputies'] help, and from everything the deputies had heard and seen, there was no indication of an injury or other emergency").

We are left with the final factor in a community caretaking analysis—whether the public need and interest outweighed the intrusion on Ciza's privacy. The liquor store employee told the dispatcher that the store was about to close. The employee's effort to secure assistance for the man before closing tips the balance in favor of the public interest in ensuring an individual's safety.

Having found the community caretaking exception to the warrant requirement supported the warrantless seizure, we affirm the district court's denial of Ciza's suppression motion and his judgment and sentence.

**AFFIRMED.**